## Wolford *versus* Herrington.

1. If one having an interest in land, is induced to confide in the verbal promise of another that he will purchase at sheriff's sale for the benefit of the former and in consequence the other is allowed to obtain the legal title, his denial of the confidence is such fraud as will make him a trustee *ex maleficio*.

2. An execution was issued against Wolford, his wife holding an unrecorded deed for land levied on as his ; on the eve of the sheriff's sale, Herrington knowing of the deed, told the wife, that her title was doubtful and if she would allow him to buy the land at sheriff's sale he would execute a writing before the property was struck off, declaring he bought for her. He bought the property, but refused to execute the writing. *Held*, that he was trustee *ex maleficio* for the wife.

3. He would be such trustee although Mrs. Wolford had had no interest in the land.

3. When it is part of the agreement that a trust shall be declared in writing or the trust be not inserted in a deed in accordance with a stipulation, a fraudulent intent at the time of making the agreement need not be shown.

5. Overton *v.* Tracey, 14 S. & R. 326 ; Thomson *v.* White, 1 Dallas 447, followed.

October 22d 1873.    Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Crawford county :* Of October and November Term, No. 52.

This was an action of ejectment for 25 acres of land brought October 10th 1872, by Dewitt C. Herrington against John Wolford.

The case was tried March 7th 1873, before Lowrie, P. J.

The plaintiff gave in evidence a judgment in favor of F. W. Ellsworth against John B. Wightman and John Wolford, and sale of the land in dispute on an execution upon the judgment to Edward Herrington.   Sheriff's deed acknowledged September 20th 1867.   Edward Herrington having died, his heirs conveyed the land to the plaintiff.

For the defendant, Mrs. Wolford his wife, under objection by the plaintiff and exception, testified that she had an unrecorded deed for the land in controversy, and Edward Herrington knew of it three or four days before the sheriff's sale.

He came to her house and asked her if she knew that it was to be sold ; that she said they could not sell it for she had a deed ; he said there might be some trouble and she had better let it be sold and let him buy it in for her ; she said that in that case she could get the money from Mr. Randolph ; he said Randolph would need the money before he would ; that he would bid it in and pay the money and allow her two years to pay him back the money, with interest ; that Herrington came again on the day before the sale and this agreement was repeated ; Mr. Wightman was present ; that soon after the sale Herrington said he had bought it for her ;

[Wolford *v*. Herrington.]

the witness further said she had a deed from P. K. Muse, and that her husband's deed was from Joseph Muse.

Samuel Stowe testified that Herrington told him in 1868 that he had bought the land for Mrs. Wolford, providing he got his money in a certain time, and interest; that he was not particular about the time—two or three years.

John Wightman testified that he met Herrington at Wolford's; that Herrington came there and offered his services and wanted to buy the land for Mrs. Wolford and give her two years to pay the money and interest. He was to give a writing to that effect before he bid the property off. In Meadville witness was anxious for him to give the writing, and he said it was no matter, he would get his lawyer to write it after the bidding. It was written and then he refused until the deed was acknowledged. Witness tendered him the interest at the end of six months. He refused unless witness would pay it as rent. Witness refused that. Witness often offered the interest and he refused. About twenty-one months after the sale witness tendered him $700. He refused, and said he would not do it unless witness would pay his lawyer. * * *

F. W. Ellsworth testified that the land was sold on his execution. Immediately after the sale Wightman said let us have an understanding. Herrington said if they pay me my money, with twelve per cent., in one year, I will let them have the land.

H. T. Colt testified that he was present at Wightman's tender of about $700. Herrington would not accept it unless Wightman would pay his lawyer $50; saw no money counted; saw him have the money.

H. H. Wolford testified that four or five months after the sale Herrington said he had bought the land for Mrs. Wolford, and all he wanted was his money and interest; thought the land at time of sheriff's sale worth $1500. There was evidence that the price paid for the land by Herrington was much below its value.

The court being of opinion that the evidence was insufficient to create a title to the land, directed the jury to find for the plaintiff. The jury so found.

On a writ of error by the defendant, he assigned the instruction of the court for error.

*W. R. Bole* (with whom was *J. W. Smith*), for plaintiff in error.—The facts in this case warrant the conclusion that Herrington intended, from the beginning, to possess himself of the land in question, by artifice and fraud, he is therefore a trustee *ex maleficio* : Beegle *v*. Wentz, 5 P. F. Smith 369; Boynton *v*. Housler, 23 P. F. Smith 453; Sheriff *v*. Neal, 6 Watts 534; McCullough *v*. Cowher, 6 W & S. 427; Miller *v*. Pearse, 6 Id. 97; Morey *v*. Herrick, 6 Harris 123; Plumer *v*. Reed, 2 Wright 46; Seichrist's Appeal, 16 P. F. Smith 237.

[Wolford v. Herrington.]

*M. P. Davis* (with whom was *S. N. Pettis*), for defendant in error, cited Todd *v.* Campbell, 8 Casey 250; De France *v.* De France, 10 Id. 385.

The opinion of the court was delivered, October 27th 1873, by SHARSWOOD, J.—Upon this writ of error we have nothing to do with the competency of the witness, Mrs. Wolford. Her testimony was admitted, and forms part of the evidence. Had it been rejected, *non constat* that the defendant would not have strengthened his case by other testimony. He might have proved *aliunde* that she had a deed for the property, or he might have produced and offered the deed itself. He had a perfect right when the evidence was in, to rely upon it. Her testimony alone, if believed by the jury—and there was no contradiction of it—showed a clear case of fraud on the part of Herrington within our late decisions of Beegle *v.* Wentz, 5 P. F. Smith 369, and Boynton *v.* Housler, 23 Id. 453. She had a claim to the land in her own right by an unrecorded deed—whether good or bad, conveying a good title or not, is unimportant—and these cases settle, that where one having any interest is induced to confide in the verbal promise of another that he will purchase for the benefit of the former at a sheriff's sale, and in pursuance of this allows him to become the holder of the legal title, a subsequent denial by the latter of the confidence is such a fraud. as will convert the purchaser into a trustee *ex maleficio*.

But we are of opinion, also, that if the testimony of John Wightman—a clearly competent witness, admitted without objection—is believed, it was sufficient to make Herrington a trustee *ex maleficio*, independent of any interest in the land in Mrs. Wolford. He testified that at the time of the verbal contract Herrington distinctly agreed that he would execute a writing declaring the trust before he bid the property off. At the time of the sale he did not deny but evaded the performance of this promise, by saying he would get his lawyer to write it after the bidding. It was written, and then he refused until the deed was acknowledged. In one of the earliest cases on this subject in Pennsylvania, Thomson's Lessee *v.* White, 1 Dall. 447, decided in 1789, where a husband and wife, having no children, conveyed the estate of the wife to a stranger, who reconveyed to them as joint tenants in fee, under a parol agreement between the husband and wife that the husband should settle the fee upon the wife's heirs, and the husband died without making the settlement, it was held that the parol evidence was admissible to establish the agreement. Mr. Chief Justice McKean said: " Where a party is drawn in by assurances and promises to execute a deed, to enter into a marriage, or to do any other act, and it is stipulated that the treaty or agreement should be reduced to writing, although this should not be

done, the court, if this agreement is executed in part, will give relief." When this case was cited before the same eminent judge soon after, in Plankinhorn *v.* Cave, 2 Yeates 370, he said: " The case of Thomson *v.* White was that of a fraud and an exception to the general rule." So it has been classed in the numerous subsequent cases in which it has been cited with approbation in the opinions of this court: Wallace *v.* Baker, 1 Binn. 616; Drum *v.* Lessee of Simpson, 6 Binn. 482; Cozens *v.* Stevenson, 5 S. & R. 426; Overton *v.* Tracey, 14 S. & R. 326; Oliver *v.* Oliver, 4 Rawle 144; Robertson *v.* Robertson, 9 Watts 34; Pugh *v.* Good, 3 W. & S. 58; Miller *v.* Pearce, 6 Id. 100: Morey *v.* Herrick, 6 Harris 128. In short, the principle settled in Thomson's Lessee *v.* White is a landmark of our law, and is well generalized by Mr. Justice Duncan, in Overton *v.* Tracey, *supra:* " If one of the contracting parties insists on a certain stipulation, and desires it to be made a part of the written agreement, and the other by his promise to conform to it, as if it was inserted in the written agreement, prevents its insertion, this is a fraud, and chancery will enforce the agreement as if the stipulation had been inserted. Having no court of chancery, our common-law courts have constantly acted upon this principle from Thomson *v.* White, 1 Dall. 424, to Christ *v.* Diffenbach, 1 S. & R. 464, in a succession of decisions, varying in their circumstances, but all bottomed upon this principle." The case before us is much stronger than Thomson *v.* White, for there was no evidence to show there that when the party made the promise he did not mean to comply with it in good faith, but circumstances evinced the contrary. The fact was that he had procured a settlement to be drawn by a conveyancer, which his wife refused to sign, because it contained a remainder to the " issue of the bodies of her three half sisters," one of whom was unmarried, which she thought an indelicate expression; and on his death-bed he expressed great uneasiness at not having made a will, and soon after the declaration lost his reason. In noticing the case in Oliver *v.* Oliver, *supra,* Mr. Justice Rogers said: " It has never been doubted that he entered into the contract in good faith." In the case before us, from Herrington's evasion of his promise at and after the bidding, and his final refusal, there was reason to infer that when he made the agreement he did not mean to perform it, and that the whole arrangement was sought by him for the very purpose of deceiving and defrauding the Wolfords, and becoming the owner of their property at a price below its true value. When, however, it is a part of the agreement that the trust shall be declared in writing, or it is shown that the trust was not inserted in the deed under a stipulation to that effect in consequence of the verbal promise to perform it, such fraudulent intent at the time of the

agreement need not be shown in order to establish the trust.    The fraud consists in the fraudulent use of the instrument, as was decided in Oliver *v.* Oliver.    It is true that it has been since held in Jackman *v.* Ringland, 4 W. & S. 149, that where there is nothing more in the transaction than is implied from the violation of a parol agreement equity will not decree the purchaser a trustee, which was affirmed in Barnet *v.* Dougherty, 8 Casey 371 ; Kellam *v.* Smith, 9 Id. 158, in the latter of which Mr. Justice Strong said : " The fraud which will convert the purchaser at a sheriff's sale into a trustee *ex maleficio* of the debtor, must have been fraud at the time of the sale."    But in none of these cases did the element exist of a promise at the time to execute a declaration of trust in writing, upon the faith of which the purchase was made. In Jackman *v.* Ringland, the opinion was by Mr. Justice Rogers, who does not even refer to his own opinion in Oliver *v.* Oliver, and evidently did not suppose that there was any conflict.    In Kellam *v.* Smith, Mr. Justice Strong cites Robertson *v.* Robertson, 9 Watts 32, in the opinion in which, by Mr. Justice Rogers, Thomson's Lessee *v.* White is cited with approbation as a case of fraud. He would undoubtedly have noticed it if he had supposed the opinion he was then pronouncing overruled it.    Thomson's Lessee *v.* White, and Oliver *v.* Oliver, have never been shaken or overruled.    These decisions are founded upon sound reason.    Where it appears that the understanding at the time of the verbal promise was by a writing to comply with the provisions of the Statute of Frauds, it is something more than a mere verbal promise.    The opposite party relies upon the special stipulation to reduce it to writing and thus make him secure.    A chancellor would decree its specific performance.    If in confidence that such writing will be executed the legal title is acquired, it is a fraud in the purchaser to refuse to do what was promised, and claim to hold discharged of it, which will constitute him a trustee *ex maleficio*.    We are of opinion that the case below should have been submitted to the jury. Some difficulty may arise, perhaps, upon another trial, though it was not suggested or argued before us, growing out of the fact that John Wolford, the defendant below, was the defendant in the execution.    It may be well for the counsel to consider the propriety of applying to the court to permit Mrs. Wolford also to be made a defendant.

Judgment reversed, and a *venire facias de novo* awarded.

AGNEW and WILLIAMS, JJ., dissented.