CHIEF JUSTICE PETERS
delivered the opinion oe the court.
Albert Morris being the owner in fee of a tract of one hundred and thirty acres of land situate in Bourbon County, on the 17th of February, 1830, conveyed it to John Morris during his life, and at his death to Morris Henry Morris and Sally Ann Morris, children of the said John Morris and Elizabeth, his wife; but if said children should not live till the death of said John Morris, nor leave lawful heirs, in that event, at the death of said John Morris, the land was to go to the children of the said Elizabeth Morris by her first husband, John Payne.
Mrs. Elizabeth Morris died in 1830, and shortly thereafter her daughter, Sally Ann Morris, died in infancy, and without issue, leaving her father and brother, Morris H. Morris, surviving her.
In July, 1849, John Morris and Morris H. Morris contracted to sell said land to Perry W. Morris, and executed their joint bond to him in the penal sum of $13,000, binding themselves to put said Perry "W. Morris in possession of the land on the 1st day of November, 1849, and to convey it to him on the 1st of March, 1851, when Perry ~W. Morris was to pay them $2,166.66; the said John Morris binding himself to convey to Perry W. Morris all the right and interest he held in and to said land by virtue of the deed to himself and others from Albert Morris, bearing date 17th day of February, 1830, and the said John to be no further bound; and *92 Mox-ris Henry Morris binding himself to make to Perry W. Morris a, good and sufficient title to said land when he shall have made the second payment therefor.
Before any conveyance was made of the land to Perry W. Morris his equitable interest in it was attached by his creditors in suits in the Bourbon Circuit Court. Pending these attaching suits Perry W. Morris died, and they were revived against Eliza Morris, his only child and heir, and progressed to final hearing, when it was adjudged that all the interest of Eliza Morris, heir at law of Perry W. Morris, in the tract of land derived by title bond from John and Morris H. Morris, filed in said suits, and the interest of Morris H. Morris derived from the deed of Albert Morris, referred to in said bond, be sold for the payment of the debts set out in the judgment, and for which Morris H. Morris was also bound.
The land was sold by virtue of said judgment, and Charles B. Colcord purchased it at the price of $52.01 per acre.
Several years thereafter John Morris undertook to convey a part of said land to Mary Morris, wife of Morris H. Morris, in the following words (omitting the formal part of the deed): That the said John Morris, for the consideration of $1 to him paid in hand by the said Mary, and for the further consideration of love and affection for his said daughter-in-law Mary, has granted and sold, and does hereby grant, sell, and convey to said Mary Morris, all the right, title, and claim of the said John Morris, after the death of the said John Morris, in and to the one half of a certain tract of land in Bourbon County, on what is called Cane Eidge, containing one hundred and thirty acres, adjoining the lands now occupied by W. E. Col-cord, ~Wm. Buckner, James Erakes, John Frakes, and Andrew Skillman, being the same tract which was attached as the property of Perry W. Morris in suits in the Bourbon Circuit Court in the name of James Horton and Charles B. Colcord against said Perry W. Morris’s adm’r and others, and the *93 right of said Perry W. Morris’s heirs and representatives was sold by a commissioner to said Charles B. Colcord; which undivided half of said one hundred and thirty acres of land was derived by descent to said John Morris as heir at law of his infant child, Sarah Ann Morris; the said John having a life-estate therein, which was sold to said Perry W. Morris; the said John owning the said life-estate as tenant by the curtesy. But it is understood that said John Morris is not to be liable in any way if the said .undivided part of said land is not recovered or held by this conveyance.
That deed bears date the 15th day of October, 1860, was not acknowledged, as the clerk certifies, until the 27th of February, 1862; and by a second certificate the clerk declares that it was produced to him for record on the 15th of August, 1864, and was then recorded.
This suit was originally brought by the children of Mrs. Elizabeth Morris by her first husband, John Payne, to recover the moiety of the land conveyed by Albert Morris, to John Morris for life, remainder to Morris H. Morris and Sally Ann Morris.
To that suit Mary Morris filed her answer and cross-petition, claiming the one half of said land under said deed of John Morris to her, alleging that, by the provisions and covenants of said deed, she is the owner, and entitled to the one undivided half of said land (the said John Morris then being dead) and the rents and profits arising therefrom since the death of said John Morris, which she avers occurred on the day of 1870. She charges that the land is in the possession of Thomas Shannon and Andrew Skillman, and that they have no title thereto, legal or equitable. She made her answer a cross-petition against' them, prays for judgment for the one half of the land, for partition thereof, and the rents and profits since the death of John Morris, and for general relief.
*94 Skillman and Shannon, in their answer to Mary Morris’s cross-petition, controvert her right to the land, and set out their derivation of title as purchasers for a full and valuable consideration, through several conveyances back to Charles B. Colcord, claiming the fee-simple title.
And in an amended answer, after setting out the executory contract for the sale of the land by John Morris and Morris H. Morris to Perry W. Morris, and the judicial sale thereof subsequently made under the judgment rendered in the consolidated cases of McClintock and others v. Perry W. Morris and others, at which Charles B. Colcord purchased the land, as heretofore stated, and tracing their derivation of title to Charles B. Colcord, the purchaser of the land at the judicial sale, they charge that John Morris and Mary Morris are estopped from denying that Perry W. Morris was vested with a complete equitable title to the whole and every part of the tract of land embraced in and attempted to be sold by said contract; and aver that if it be true, as claimed by Mary Morris, that John Morris then owned an undivided half of said land in fee-simple, that, by the contract with Perry W. Morris, he sold to him that right and bound himself to convey the same to him, and that he and Mary Morris, his privy, are estopped from setting up any claim to the land hostile to those holding under Perry ~W. Morris, deceased, and in privity to him.
F. P. Colcord also .answered the cross-petition of Mrs. Mary Morris; and, after giving the history in detail of the several conveyances, from the judicial sale to C. B. Colcord down to the tenants now in possession, he being himself one of the intermediate vendors, and reciting the consideration for each conveyance, he alleges that Mary Morris claims by gift or voluntary conveyance from John Morris, her father-in-law, who united with his son, Morris H. Morris, in the sale to Perry W. Morris, and was a party with said Perry W. and *95 Morris H. in the consolidated suits against them in which the judgment was rendered, and under which said land was sold; that the conveyance by said John to Mary Morris was subsequent to that judicial sale, was without valuable consideration, and that Mary Morris had actual notice of said judicial sale and of those subsequent thereto; that the purchaser, or those claiming under him, were in the actual possession of the land claimed by her at the time John Morris executed the deed to her; and he also pleads that she is, in privity to her grantor, estopped to set up title to the land.
The demurrers of M. H. Morris and Mrs. M. Morris to the answers were overruled; and having elected to stand by them, their cross-petitions were dismissed, and they have appealed to this court; and the question now to be decided is, which of the parties has the paramount right to the land ?
By the deed of Albert Morris to John Morris for life he acquired the right to the possession and the ownership of the land during his life. Upon the death of his daughter, Sally Ann, without issue, he succeeded as heir to her interest in the land, subject to be defeated by the death of his son, Morris H. Morris, without issue, during his life. But John Morris having died, leaving Morris H. Morris surviving him, the estate he took in the land as heir to his daughter became absolute, or an indefeasible fee; and by his death the estate of Morris H. Morris in said land became also absolute and indefeasible.
It can scarcely be doubted, from the character of the bond executed by John and Morris H. Morris to Perry W. Morris, and the price agreed to be paid by the latter for the land, that they all believed, and acted upon the belief, that the obligors in the bond had a perfect title to the land, and could make to their vendee a good and sufficient deed. They may, and perhaps did, believe that upon the death of Sally Ann Morris her interest passed to her brother. But whatever may have been their belief on the subject, they both joined in the sale, binding *96 themselves in the penal sum of $13,000 for a good and sufficient title to Perry W. Morris, which we understand to be an undertaking to convey, with a covenant of general warranty; and if the bond does not contain a direct stipulation on the part of John Morris to unite in such a conveyance, it is in effect a covenant on his part that Morris H. Morris shall make to their vendee a good and sufficient title to the land; and he and his privies are estoppéd in equity from setting up any claim prejudicial to those holding under their vendee.
Mary Morris is a mere volunteer, with full notice that those from whom she is seeking a recovery are purchasers for a valuable consideration, and were in possession of the land at the date of her deed, for the facts are recited in the deed.
Nor are we satisfied that the bond of John and Morris H. Morris to Perry W. Morris does not contain a direct stipulation on the part of John Morris to convey the interest he attempted to convey to Mary Morris. He binds himself to convey all the right and interest in and to the land to Perry W. which he holds in and to the same in virtue of a deed to himself and others from Albert Morris, etc. That deed passed to him not only a life-estate in the land, but also a contingent remainder in one half of it — the interest of Sally Ann Morris, his daughter. That interest, as has heretofore been shown, he got; and if he did not acquire it in virtue or through the strength of the deed from Albert Morris, it would be difficult to discover how he got it.
John Morris was present, and participated in the sale to Perry W. Morris, and encouraged him to buy for a full and adequate price, with a clear and complete title, under the belief that the title he was getting was good; and failing to disclose to him the claim now set up, neither he nor his privies will be permitted to dispute the validity of the purchase. (Story’s Equity Jurisprudence, section 385.)
But, in addition to all this, John Morris was a party in the *97 attaching suits against Perry W. Morris to subject the land to the payment of his debts. The judgment for a sale of the land was rendered. John Morris never suggested that there was any defect in the title, and stood by and saw it sold to a purchaser, who had a right to believe that he was getting a clear title to the whole tract; and that judgment is now in force, and John Morris is bound thereby.
The authorities to which we have been referred by the learned counsel for appellants we do not consider analogous to the present case.
After a careful consideration of the case and of the authorities cited we can not hesitate to concur with the court below, and the judgment must therefore be affirmed.