DAVIS v. KERR.

(Filed April 3, 1906).

*Trusts — Evidence — Question for Jury — Argument of Counsel.*

1. Where at the time of the purchase and the conveyance of real estate, the purchaser in consideration thereof or as an inducement thereto, promises in parol to hold the legal title in trust, or for the benefit of another, such promise will be enforced and trust executed, in accordance with its terms, by the court.

2. Where the mortgagee, either in person or by attorney, purchases the property mortgaged, at a public sale, and at the time promises to hold the legal title in trust or for the benefit of the mortgagor, evidence as to his conduct at and subsequent to the sale, and his manner of dealing with the property, together with his declarations are competent to be submitted to the jury, upon the trial of an issue involving the existence and terms of an alleged parol agreement to hold the legal title in trust for the mortgagor.

3. In the trial of an issue involving the declaration of a parol trust, if there is any evidence fit to be submitted to the jury, the weight and probative force of such evidence is for the jury, under proper instructions by the court.

4. Witnesses testifying under subpœna are entitled to the same respectful treatment by counsel as are the parties to the cause. While the court does not approve the language used by counsel in this cause, it not appearing that the appellant was prejudiced thereby, the discretion vested in the presiding judge will not be reviewed and a new trial ordered.

ACTION by Junius Davis, Receiver of the Bank of New Hanover, against J. D. Kerr and others, heard by *Judge Fred Moore* and a jury, at the Fall Term, 1905, of the Superior Court of BLADEN.

This was an action for the recovery of the possession of several tracts of land, the title to which plaintiff alleged to be in him as receiver of the Bank of New Hanover. Defendant J. D. Kerr admitted that the legal title was in plaintiff. By way of equitable counterclaim he averred that being the owner of said lands, on the 18th day of January, 1885, he conveyed them by way of mortgage to Isaac Bates, president of said bank, to secure the payment of a note of $500. That thereafter, during the year 1890, an action was brought and prosecuted to final judgment for the purpose of foreclosing said mortgage, and that a commissioner was duly appointed to sell said lands, etc. That, prior to the day appointed for the sale, he entered into a parol agreement with said Bates, by the terms of which he, said Kerr, was to attend the sale, bid in the lands and have deed executed to said Bates, who would hold the title for said Kerr until the debt and interest was paid, when he would convey to said J. D. Kerr. That pursuant thereto said Kerr did bid off the lands and directed the commissioner to execute the deed therefor to said Bates, which was done on April 11, 1890. That he remained in possession, sold off a portion of the lands to R. W. Gibson, which were conveyed by said Bates by his (Kerr's) direction —made other payments thereon, leaving due upon a settlement had with said Bates a balance of $62.50. The lands were thereafter conveyed by Bates to Bank of New Hanover and afterwards vested in plaintiff, who became receiver, June 1893.

The following issues were submitted to the jury:

1. Did Isaac Bates purchase the lands sold by C. C. Lyon, commissioner, in trust for the defendant, J. D. Kerr, and agree to convey said lands to J. D. Kerr on the payment of $500 and interest?

2. Did the defendant, J. D. Kerr, pay the said $500, except the sum of $62.50?

DAVIS v. KERR.

3. Is the plaintiff seized in fee of the lands in controversy?

4. Does the defendant, J. D. Kerr, wrongfully withhold said lands from plaintiff?

Defendant John D. Kerr testified in his own behalf, as follows: "Prior to the day of the sale, I had agreed with Bates to attend sale and buy land for him, he to hold it for me until I should repay the full amount of the bid with interest on it from the day of the sale. The bid was $500. I made the only bid. I directed commissioner to report the bid in the name of Isaac Bates, at the sum of $500. The sale was confirmed and deed made accordingly. Several persons were present at the sale—Bates was not present, I represented him, and no one else did. Deed by commissioner to Bates was made pursuant to this agreement. Some time after the sale, Mr. Gibson applied to me to buy a part of the land. I reported the bid to Bates. Told him I wanted him to sell to Gibson for me for $250, and take the money as a credit on this debt of $500 and interest. He agreed to do so. Thought I ought to have gotten more for it. This was one of the tracts in the mortgage. Bates made the deed to Gibson. I directed him to do so. He told me that Gibson paid him the $250 and I saw the deed immediately after its execution. Gibson was present during part of the conversation. I paid Bates at one time $150. I can't give the date of these other payments further than in last talk I had with Bates just prior to the failure of the bank. He stated that he would like for me to pay up the balance of the debt, that he wanted to close the matter up. I asked him how much the balance of the debt was. He went back in the bank, brought out a memorandum of some sort, and said pay the debt down to $50. I gave him as much of the money as I could spare. He told me that there was $62.50, balance due after I gave him the money. This was in June or July, 1893, just before failure of the bank. I have been in possession of the land

all the time. After the sale to Bates, and before the bank failed, I was in possession, paid the taxes during those years, or had it done. I paid other amounts besides the $150 and the amount Gibson paid, but I cannot give the amounts or the dates. The amounts were small. If I ever had receipts, I lost them. Since the receiver was appointed, he has paid some taxes on this land. I don't remember how much he has paid, except that he paid two or three or possibly four years' taxes. I have paid the taxes all the time. The land was worth probably one thousand dollars. It was reported by commissioner that $500 was a fair valuation—he was my attorney all through that suit. I did not know as a fact that the Bank of New Hanover claimed this land. Saw deed to Gibson. The deed is made by the Bank of New Hanover, signed by Bates as president and others as directors. Deed from Bates to Bank of New Hanover for this land March 14, 1891. Saw plaintiff in regard to the land in his office in Wilmington and told him that I owed balance due on this debt and had been informed that Bates made a conveyance of it to him, and that he was claiming it as receiver, that I wanted to avoid a lawsuit if possible and would like for him to carry out the agreement which I had made with Bates. He replied that he did not recognize any such agreement and would decline to do so. I said I wanted to avoid a lawsuit; wanted to pay up what I owed. He asked me what I would give for it. I made him an offer of $250, and said 'If you feel like accepting that, I do not know whether it amounts to more or not, but would be willing to pay it rather than have a lawsuit.' He said that he had been offered $500. I asked him to let me know what he would take for it. Said he would take $800, and I told him that I would have to hold off, did not have the cash then. Substantially the matter dropped there. I believe that I wrote him again." Letter shown witness from plaintiff, receiver, March 31, 1902, in which it was said: "When we last talked about it you offered

DAVIS *v.* KERR.

me $800 for all of the Bladen lands held by me as receiver, or $500 or $550, I think, for the 640 acre tract which lies partly in Colley Swamp. I write now to ask if I understood you correctly and if it holds good now, and if so, how soon you could wind it up and pay the money. Of course I made it clear to you that this is a cash transaction. Please let me hear from you at once, as I have other offers for the land. I must have an answer from you this week, by Friday, if possible." Witness answered on April 4, "I will be down on 10th April next, when I hope to arrange satisfactorily our business. Hope you can be in the city that day." Witness continued, "I do not think I agreed to pay him $800, that was not my understanding. Some conversation with Mr. Thomas Davis, told him I thought the land was not worth $800, but would rather pay that amount than have a lawsuit, that I could not raise the $800 as it was a cash transaction, but thought I could raise the money. Did not try to get it." R. W. Gibson testified for defendant: "I made a bargain for land described in deed to me with defendant Kerr first. Agreed on $250 as the price several days before I got the deed. Kerr and I then went to the bank and saw Bates. Kerr did the talking, cannot remember what he said. I paid the money for the land to the Bank of New Hanover—took a deed from the bank. Kerr and I agreed to meet in Wilmington to get Bates to make the deed. Kerr told me that bank was the owner of the land." Plaintiff introduced deposition of Isaac Bates and other testimony tending to contradict the defendant's version of the transaction. At the close of the evidence, plaintiff demurred and moved for judgment. Motion denied, plaintiff excepted.

Plaintiff, among other prayers, requested the court to charge the jury: "The declarations of Kerr, the defendant, as to agreement between Bates and himself that Bates would re-convey to him upon payment of $500, are not of themselves sufficient to change the deed from C. C. Lyon, commis-

sioner, to Isaac Bates, from an absolute to a conditional one, or to engraft a trust on it in favor of Kerr." The court refused the instruction. Plaintiff excepted. The jury having answered the issues in favor of the defendant, judgment was rendered accordingly, to all of which plaintiff excepted. The plaintiff further excepted to the form of the judgment for that it provided for the sale of the lands by a commissioner and the application of the proceeds of the sale to the payment of the debt, and further that the costs of the action were taxed against the plaintiff, it having neither been alleged nor proven that the defendant, J. D. Kerr, was able, willing or ready to pay the debt found by the jury to be due.

*McLean, McLean & McCormick* for the plaintiff.
*E. W. Kerr, Homer Lyon, C. C. Lyon, Shepherd & Shepherd* for the defendant.

CONNOR, J., after stating the case: We have not noted plaintiff's several exceptions to His Honor's ruling in regard to the admissibility of evidence, because the questions raised by them are presented upon the demurrer to the entire evidence and motion for judgment of nonsuit. The question pressed and argued in this court upon, the demurrer, is whether the entire evidence, if true, was of that character required to engraft a trust upon the legal title to land. The plaintiff contends that proof of declarations of the holder of the title, made antecedent to, or at the time of, the delivery of the deed, is insufficient to establish a parol trust, unless evidenced by facts and circumstances *de hors* the deed. That, in this record the only evidence of the alleged trust is the unsupported testimony of defendant Kerr that Bates promised to take the title and hold for his benefit, conveying to him when he paid the amount of the bid with interest. That this testimony is denied by Bates. That, in this condition of the

case the question is not one of intensity, which it is conceded would be for the jury, but of character which must be decided by the court as matter of law. It must be conceded that expressions have been used by this court which, but for later decisions, would seem to sustain the proposition of the plaintiff. In *Cobb v. Edwards,* 117 N. C., 247, it is said: "The court may declare that there is not evidence of the kind required by law to entitle the plaintiff to the relief sought." It is difficult to conceive of a case in which there would be an absence of some act, or conduct of the parties connected with the language used, throwing light upon and either sustaining or contradicting the allegation of the declaration of a parol trust. The question has recently undergone so thorough an investigation, involving a review of our own and cases from other courts, that we do not deem it necessary to review our conclusions or the reasons upon which they are based in the opinions of *Mr. Justice Walker* in *Avery v. Stewart,* 136 N. C., 426, and in *Sykes v. Boone,* 132 N. C., 199 (95 Am. St. Rep., 619). Quoting the language of Mr. Bispham, he says: "When a party acquires property by conveyance, or devise, secured to himself under assurances that he will transfer the property to, or hold and appropriate it for, the use and benefit of another, a trust for the use and benefit of such other person is charged upon the property, not by reason merely of the oral promise, but because of the fact that, by means of such promise he had induced the transfer of the property to himself." Bispham Eq., section 218. The principle is illustrated and enforced in a large number of cases in our Reports, many of which are cited and commented upon in the opinions in the cases named. It must be conceded that language is sometimes used by the court when discussing the cases, both questions of law and fact, which are difficult to reconcile, in regard to the kind and intensity of proof required. In regard to the first question, it is not necessary to discuss the law in this appeal, because following the princi-

141——2

Davis *v.* Kerr.

ples laid down in *Avery v. Stewart, supra,* we are of the opinion that there is found in the testimony in this record evidence of such facts and circumstances as were sufficient to take the case to the jury. The relation of the parties, that of mortgagor and mortgagee, the purchase by defendant Kerr at the sale—Bates not being present and Kerr making the only bid, the fact that Kerr remained in possession, that when Mr. Gibson wished to buy a portion of the land, Kerr made the trade, fixed the price and that Bates made the deed under Kerr's directions, etc., much of which is uncontradicted and some of which is supported by Mr. Gibson. These facts are consistent with the existence of some arrangement between Bates and Kerr. It would, without some such explanation, have been a remarkable and inexcusable breach of duty on the part of Bates, representing the bank, to have permitted the land to be sold in his absence and without any representative, to see that it brought the amount of the debt, or, at least, a fair price. It is equally difficult to understand why he permitted the defendant to remain in possession from April, 1890, until the failure of the bank, June, 1893, unless some agreement existed between Kerr and himself. Again, except upon the same theory, how is Kerr's interest in and conduct in regard to the sale to Gibson explained? Defendant, it seems, without question alone paid the taxes until the plaintiff came in as receiver and continued to do so, although the receiver also paid them. It is true that there is evidence, much of which is uncontradicted, of language and conduct on the part of defendant inconsistent with the allegation that he had paid for the land. The only purpose for which we are at liberty to discuss the testimony is to ascertain whether, admitting the proposition of plaintiff in regard to the kind of evidence required, such is found. Having passed that point and seen that the defendant was entitled to go to the jury, we may not trespass upon their domain. What weight the jury will give to the evidence, how

DAVIS *v.* KERR.

it will be affected in their opinion by the testimony introduced by plaintiff and by defendant's conduct, are questions solely for them.

This court has held in *Lehew v. Hewitt,* 130 N. C., 23, that in those cases where the evidence is required to be clear, cogent and convincing, the court may not decide whether it is so, but must submit the evidence to the jury. In that respect we refer to the opinion in *Avery v. Stewart, supra,* as containing our views. We are therefore of the opinion that His Honor correctly submitted the evidence to the jury and, in the absence of any exceptions, we assume that he explained to them the law and the rules by which they were to be guided in arriving at a verdict. The question of payment was one of fact, and we find no exception to His Honor's ruling in that regard. The original debt was due to the bank, Bates was, in the entire transaction, acting for the corporation.

Plaintiff excepts to the language of defendants' counsel in regard to the plaintiff's witness, Bates, and His Honor's course in that respect. Certainly the language is not to be commended in a judicial investigation. It was not calculated to aid the jury or enlighten the court. Denunciation is not argument, either in the court house or elsewhere. There may be a wide divergence of opinion as to the proposition that "this is a sentimental age" and whether we use "mild expressions" instead of "plain strong language." Certainly the counsel could not have supposed that he was under the ban of sentimentalism, in describing his estimate of the witness. It is exceedingly difficult, as this court has often said, to draw the line between proper comment and abuse of the privilege conferred upon counsel. This privilege is conferred upon counsel as a sacred trust, to be used only in defense of truth and right. It does not pertain to his personal, but to his official relation as an officer of the court. Any use of it for other than the high purpose for which it is con-

ferred is an abuse. As we have said in *Horner's case,* adopting the language of a judge of this court, "It is difficult to lay down the line, further than to say that it must, ordinarily, be left to the discretion of the judge who tries the cause," etc. While we do not sustain the plaintiff's exception, because we are not persuaded that any substantial injustice was done, we do not concur in the suggestion made in dcdefendant's brief, "that a witness does not come under the same rule that applies to plaintiff or defendant." If there be any difference, which is not conceded, a witness should be more carefully guarded by the court from assaults of counsel. The parties come voluntarily, while a witness is brought in by the process of the court. Both are entitled, as are the court and jury, to have the *testimony* discussed. It is the office of counsel to comment upon, analyze and discuss their testimony, and in a proper, respectful manner call attention to their demeanor, relation to the parties and the cause. In discharging this duty it is due the court, the jury, the witness and to counsel himself, but above all to the cause of truth and justice, whose minister he is, to speak temperately and with a due regard to the sacred trust reposed in, and the responsibility imposed upon, him. Upon an examination of the entire record, we find no reversible error of the law. In view of the pleadings and testimony we think that the cost should be equally divided. It is so ordered:

Affirmed.

WALKER, J., did not sit on the hearing of this appeal.