## TURNER v. TURNER.

No. 1845.    Opinion Filed July 18, 1912.

(125 Pac. 730.)

1.    TRUSTS—Establishment—Constructive Trust—Validity of Oral Trust. One brother and joint heir to a certain tract of land entered into an agreement with another brother, who was the administrator selling the land, that he would bid in the land at the administrator's sale, he and the administrator advancing money necessary to pay claims against the estate, and to buy in an individual interest which a third party had purchased from other heirs, and that they would agree on a price and sell one to the other, or they would sell the land to some stranger, and after each had taken out of the proceeds the money advanced by him the balance should be divided equally between the brother bidding, the administrator, and an insane brother, who was also a joint heir of the land. The land was bid in, and an administrator's deed made to the brother bidding, which recited a consideration of $1,600. The administrator made a sworn report to the court, showing that he had sold the land for $1,600. No money was actually paid the administrator. Four years after the sale, during all of which time the administrator remained in possession, the brother to whom the deed was made brought suit, claiming title by virtue of the deed. Held, that the agreement between the bidder and the administrator constituted the bidder a constructive trustee of the land, and that it was not such a

trust as was required, by section 7267, Comp. Laws 1909, to be in writing.

2.  **EXECUTORS AND ADMINISTRATORS—Sales Under Order of Court—Purchase by Administrator—''Purchaser.''** The administrator did not, by entering into the agreement, become a ''purchaser,'' within the inhibition of section 5346, Comp. Laws 1909.

3.  **ESTOPPEL — Prejudice as Element.** The administrator, as against the brother to whom the deed was made, was not estopped by his report of sale to show the real facts.

(Syllabus by Rosser, C.)

*Error from District Court, Cleveland County;*
*R. McMillan, Judge.*

Action by Joseph T. Turner against Charles E. Turner. Judgment establishing a trust in favor of defendant, and plaintiff appeals. Affirmed.

*J. B. Dudley* and *Jas. L. Brown,* for plaintiff in error.

*Ben F. Williams* and *C. M. Keiger,* for defendant in error.

Opinion by ROSSER, C. This was an ejectment suit by Joseph T. Turner against Charles E. Turner in the district court of Cleveland county. Joseph T. Turner and Charles E. Turner are brothers. William Turner, their father, died intestate, seised of the land in controversy, and left six children his sole heirs. It seems that he was indebted; but the record does not show to what extent. Three of his children, John Turner, William A. Turner, and James F. Turner, sold their interest in the land to one H. Cowan. The defendant, Charles E. Turner, was appointed administrator of the estate. He obtained an order to sell the land in controversy, for the purpose of paying the debts of the estate, and advertised the land for sale. He and the plaintiff had an understanding with one Dr. Nail that if the land did not bring beyond a certain price Nail should buy the land at the sale with money to be furnished by plaintiff and defendant, and that he would then deed the land back to them and another brother, Andrew J. Turner, who, it seems, is not of sound mind. Just a short time before the sale, the plaintiff suggested to the defendant that they did not know whether Nail was reliable, and that it would be better for plaintiff to buy the land and hold

it in the same way. The defendant then requested Nail not to bid in the land. The land was actually bid in by the plaintiff, and the deed was made to him by the defendant as administrator. The deed recited a consideration of $1,600. No money was actually paid him. The plaintiff and defendant borrowed $500, and that, or a greater part of it, was used in buying the interest of H. Cowan in the land. The agreement, as testified by the defendant and found to be true by the trial court, was that the plaintiff, defendant, and the insane brother, Andrew J. Turner, were each to hold a one-third interest in the land, after deducting the amounts advanced by plaintiff and defendant, and the plaintiff and defendant were to agree upon a valuation and sell out one to the other, or they were to sell out to some third party, and take out the money they had each invested and divide the surplus, if any, equally among the three, the plaintiff, defendant, and Andrew J. Turner. The administrator made a report of sale of the land, under oath, showing that he had sold the land to Joseph T. Turner for the sum of $1,600. After the sale the defendant remained in possession of the land for several years. He had the deed recorded, and retained possession of the land. There was a judgment for defendant, establishing a trust, and the plaintiff appeals. The judgment expressly saves the rights of the plaintiff to have his equity in the land settled and adjusted by further proceedings.

The contentions of plaintiff are: First. That the contract between plaintiff and defendant was not enforceable, for the reason that it was not in writing, and was invalid within the statute of frauds and statute of uses and trusts. Second. That it was invalid, because it was an attempt by the administrator to purchase the property of the estate, in violation of the statute. Third. That the defendant was estopped, by his recital in his deed and the proceedings in the probate case, from claiming any interest in the land.

The first proposition is the difficult one. The provisions of the statute of frauds with reference to contracts to convey land are not applicable. The defendant does not allege there was a contract to convey lands. The allegations of the answer are that

the land was conveyed to plaintiff in trust to reimburse himself and defendant for money they advanced, and to divide the amount the land was worth over what they had advanced, into three parts; each of them to receive one part and their insane brother, Andrew, to receive one part.

Section 7267, Comp. Laws 1909, provides that "no trust in relation to real property is valid, unless created or declared: (1) By a written instrument, subscribed by the trustee or by his agent thereto authorized by writing. (2) By the instrument under which the trustee claims the estate affected; or (3) by operation of law." The facts as shown create a trust by operation of law. The trust is of the class known as constructive trusts.

An examination of the record shows that the two brothers wanted the land to bring what it was worth, and that they agreed, if it did not bring a certain price, they would have it bid in, and they would themselves advance the money necessary to pay off the claims against the estate. Three of the brothers had sold their interest, and the purchaser from them, Cowan, had to be repaid. The insane brother, Andrew, had an interest in the land, subject to the debts. The plaintiff proposed to buy it in, and to hold it in trust for all three, subject to his and the defendant's right to have the money they advanced repaid to them. It is very clear that if plaintiff prevails in this action an injustice will be done the other two brothers. The statute of frauds cannot be used to effectuate a fraud. Hughes, Datum Posts, 182, L. C. 341.

In this case, if plaintiff is permitted to recover, he will gain an advantage from a statute that was intended to prevent fraud and perjury. Whenever a person conveys land to another under such circumstances as that the other cannot, in equity and good conscience, hold it, equity will consider him a constructive trustee for the persons rightfully entitled. Perry on Trusts, sec. 171.

The plaintiff and defendant, together with Andrew Turner, were joint tenants or copartners in the land. The general rule is that a joint tenant cannot buy in an outstanding title and hold it adversely to his cotenants, but that he must hold it for their

benefit, with the right to require them to contribute their proportion of whatever the outstanding title costs him.   38 Cyc. 40. In this case the defendant, as tenant in common, desiring to protect his own interest and the interest of his insane brother, entered into the agreement that was made with plaintiff.   If the plaintiff had not entered into this agreement, defendant might have made some other arrangements that would have protected their interest.   To allow plaintiff to hold the land would be to allow him to profit by his breach of contract, and deprive defendant of the interest he thought he was protecting, and which he might have protected in some other way, had plaintiff not made the agreement he did.   No cases exactly in point have been found; but a number of cases in which the same principle is involved can be cited as sustaining the conclusion that the plaintiff in the case held the land purchased by him as constructive trustee.

In the case of *Chadwick v. Arnold*, 34 Utah, 48, 95 Pac. 527, a mortgagor entered into an agreement with a person, by which he was to buy the mortgaged premises, taking title in his own name, and upon *promise* of a certain sum he was to reconvey the property to mortgagor.   It was held that a trust *ex maleficio* arose, enforceable, though the contract was not in writing, as required by the statute of frauds.   In the course of the opinion, the court said:

"The doctrine, however, is quite generally accepted that a trust *ex maleficio* arises whenever a person acquires the legal title to property of another by means of an intentional false or fraudulent verbal promise to hold the same for a certain purpose, and, having thus obtained the title, retains and claims the property as his own.   The doctrine is well stated in volume 3, Pom. Eq. Jur. (3d Ed.) sec. 1055, as follows: 'A second well-settled and even common form of trusts *ex maleficio* occurs whenever a person acquires the legal title to land or other property by means of an intentionally false or fraudulent verbal promise to hold the same for a certain specified purpose, as, for example, a promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like; and, having thus fraudulently obtained the title, he retains, uses, and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit.

Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement.'

"And in section 1056: 'The foregoing cases should be carefully distinguished from those in which there is a mere verbal promise to purchase and convey land. In order that the doctrine of trusts *ex maleficio* with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal; otherwise the statute of frauds would be virtually abrogated. There must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated. Equity does not pretend to enforce verbal promises in the face of the statute; it endeavors to prevent and punish fraud by taking from the wrongdoer the fruits of his deceit, and it accomplishes this object by its beneficial and far-reaching doctrine of constructive trusts.'

"And in a note to section 1055 it is said: 'The doctrine is often used with great efficacy to prevent the triumph of fraud, and to protect persons under necessities, in cases where, at execution sale or mortgage foreclosure, or other compulsory public sale, a party buys in the land under a prior fraudulent promise, made to the owner, that the purchaser will take the title, hold the property for the benefit of such owner, and will reconvey to him on being repaid the amount advanced for the purchase price; and, having thus by fraudulent contrivance cut off competition and prevented the owner from making other arrangements to protect his property, and, having obtained the property, perhaps, for much less than its real value, he refuses to abide by his verbal promise, and retains the land or other property as absolutely his own. Equity will relieve the defrauded owner by impressing on the property a trust *ex maleficio,* and by treating the purchaser as a trustee *in invitum.'*

"Mr. Waterman, in his work on Specific Performance of Contracts, at section 252, says: 'A verbal agreement, entered into by A. and B. with an execution debtor whose land is about to be sold by the sheriff, to purchase it with their own funds and hold it for his benefit is equivalent to a loan of money and a taking of the title as security for its repayment, or an agreement by one person to purchase land for the benefit of another, under the circumstances which would amount to fraud upon the latter, if the former were allowed to repudiate his promise, and therefore is not within the statute of frauds.'

"And in section 253: 'Where it is verbally agreed between the vendor of land at a judicial sale and the purchaser that the purchaser's rights shall be only those of a mortgagee, and he fraudulently violates the contract by obtaining an absolute deed to himself and selling the land to a third person, who has notice of the agreement, the purchaser and his vendee hold the title in trust for the original owner.'

"With respect to the question when a constructive trust will be created by a court of equity, at section 171, vol. 1, Perry on Trusts (4th Ed.), it is said: 'Thus, where one buys land at an execution sale, or under a trust deed, under an agreement with the debtor that the latter may redeem, the purchaser holds in trust; it would be a fraud to allow him to repudiate the contract.'

"In the case of *Gruhn v. Richardson*, 128 Ill. 178, 21 N. E. 18, it is observed: 'Where one having an interest is induced to confide in the verbal promise of another that he will purchase for the benefit of the former at a sheriff's sale, and in pursuance of this allows him to become the holder of the legal title, a sub-sequent denial by the latter of the confidence is such a fraud as will convert the purchaser into a trustee *ex maleficio*.'

"In support of these texts are the following cases: *Sand-foss v. Jones*, 35 Cal. 481; *Wolford v. Herrington*, 74 Pa. 311, 15 Am. Rep. 548; *Mulholland v. York*, 82 N. C. 510; *Tankard v. Tankard*, 84 N. C. 286; *Avery v. Stewart*, 136 N. C. 437, 48 S. E. 775, 68 L. R. A. 776; *Rose v. Bates*, 12 Mo. 30; *Soggins v. Heard*, 31 Miss. 426; *Dodd v. Wakeman*, 26 N. J. Eq. 484; *Cutler v. Babcock*, 81 Wis. 195, 51 N. W. 420, 29 Am. St. Rep. 229; *Ryan v. Dox*, 34 N. Y. 307, 9 Am. Dec. 696; *Laing v. Mc-Kee*, 13 Mich. 124, 87 Am. Dec. 738."

In *Dickson v. Stewart*, 71 Neb. 424, 98 N. W. 1085, 115 Am. St. Rep. 596, it was held, where a party acquires legal title by purchase of land at the sheriff's sale, in pursuance of parol agreement with the judgment debtor that he will hold the property as security for the loan or the money paid and relieve the land from the judgment lien, and that he will reconvey when the money is refunded, that such an agreement is not within the statute of frauds, and that he can be compelled to reconvey. See, also, *Phillips v. Hartenberg*, 181 Mo. 463, 80 S. W. 891, and cases there cited; *Collins v. Williamson*, 94 Ga. 635, 21 S. E. 140; *Pope v. Dapray*, 176 Ill. 478, 52 N. E. 58.

In *Griffin v. Schlenk*, 139 Ky. 523, 102 S. W. 837, a parol agreement between joint owners of land that one of them should

bid in the land at the mortgagee's sale for the benefit of all was held valid. In the course of the opinion, the court said:

"Appellant's contention that the agreement, being parol, was within the statute of frauds, is wholly untenable. 'An agreement between joint owners of real estate that one shall bid at a public sale of it for the benefit of both (or all) is valid, although by parol.' 29 Am. & Eng. Enc. of Law (2d Ed.) 899. Appellant's purchase of the land under the agreement created a trust by operation of law for the joint benefit of all the appellees and herself. Such trusts are enforceable at the suit of all or any of the beneficiaries. It is not material that she was not paid in advance their proportion of the money to purchase the property. Some of them, according to the evidence, were ready and able to buy it when her bid was accepted, but were prevented by the agreement from bidding. In permitting appellees to share with appellant the benefit of the purchase, the court could require them to contribute ratably to the making up of the purchase price. Appellees showed their willingness to contribute their respective shares of the purchase price paid for the land by appellant, but were not permitted to do so by her act in repudiating the trust imposed by the agreement. Constructive trusts are held not within the statute of frauds, because they are bottomed on the doctrine of estoppel, and the operation of an estoppel is never affected by the statute of frauds. *Morris v. Shannon,* 75 Ky. 89; *Martin v. Martin,* 55 Ky. 8; *Miller v. Antle,* 65 Ky. 407, 92 Am. Dec. 495; *Green v. Ball,* 67 Ky. 586; *Parker v. Catron* [120 Ky. 145], 85 S. W. 740, 27 Ky. Law Rep. 536 [117 Am. St. Rep. 575]; Pomeroy's Eq. secs. 1030-1044."

In *Carr v. Craig,* 138 Iowa, 126, 116 N. W. 720, the court said:

"We see no difficulty about establishing such a trust obligation in a court of equity by parol evidence. Such evidence is not to be shut out on the ground that it tends to show an express trust in land, in violation of the statute of frauds, but is admissible to establish a constructive trust, arising from the violation by the defendant of the confidence reposed in him by his own procurement, violation of which constituted a fraud. There is enough in this record to show that, while defendant induced plaintiff to allow him to acquire title to her land by foreclosure, by means of a promise to refund to her the money she had invested, his real intention was to acquire title, and hold it in violation of such agreement. This purpose is evidenced by his subsequent conduct. Under such circumstances, a court of equity

will treat the acts of the defendant as constructively fraudulent, and defeat his attempted wrong by imposing upon him a duty in the nature of a trust to carry out his agreement, although established only by parol evidence. *Gregory v. Bowlsby*, 126 Iowa, 588 [102 N. W. 517]; *Crossman v. Keister*, 223 Ill. 69, 79 N. E. 58, 8 L. R. A. (N. S.) 698, 114 Am. St. Rep. 305; *Larmon v. Knight*, 140 Ill. 233, 29 N. E. 1116, 33 Am. St. Rep. 229; 2 Pomeroy, Equity (2d Ed.) secs. 1044-1055."

In *Frost v. Perfield*, 44 Wash. 185, 87 Pac. 117, the same conclusion is arrived at, without giving much reason, other than it was wrong for the purchaser to so abuse the confidence of the owner, who had relied upon him. See, also, *Davis v. Kerr*, 141 N. C. 11, 53 S. E. 519; *Phillips v. Hardenberg*, 181 Mo. 463, 80 S. W. 891; *Collins v. Williamson*, 94 Ga. 635, 21 S. E. 140; *Pope v. Dapray*, 176 Ill. 478, 52 N. E. 58.

It is not intended to hold in this opinion that an agreement, such as was made here, would be enforced between strangers to the property, unless in writing. It is only in cases where the person, who is seeking to enforce the agreement, has an interest in the property sold that such a parol agreement can be enforced; but where a person has an interest in the property, and relies upon the promise that the purchase will be made for his benefit, it will be enforced. Because of the promise, he has probably neglected to take other steps that he might have taken to protect himself, and thereby a fraudulent advantage has been taken. See *Lancaster v. Long*, 220 Pa. 449, 69 Atl. 993; *Boyd v. Hankinson*, 92 Fed. 49, 34 C. C. A. 197.

The second question must also be decided against the appellant. It is true the law prohibits an administrator from purchasing at his own sale. This is a salutary rule, and cannot be too rigorously enforced. No man can lawfully act in a matter where there is conflict between duty and interest. It is the duty of an administrator to get the best price possible. If he were permitted to buy, it would be to his interest to obtain the property at the lowest price possible. The two positions are incompatible. But this principle has no application in this case. Under the agreement of plaintiff and defendant, there was to be no change in the title, except that they should be reimbursed for

the money paid out by them in obtaining Cowan's interest and paying the debts of the deceased. The defendant did not get more than he already had. No one was hurt. No one's interest was affected further than to the extent of the money advanced. Defendant, in entering into the contract with plaintiff, was merely protecting his own interest and that of the other tenants in common, or coparceners. The rule is laid down in 18 Cyc. 771 that, if the personal representative has an interest in the estate, he may purchase at his own sale, if necessary to protect his interest. A number of authorities are cited in support of this rule, and an examination shows they are in point. Section 5346 of Comp. Laws 1909 prohibits an administrator from purchasing property of the estate he represents. Whether this statute will prevent an administrator from purchasing property in which he owns an interest, in order to protect that interest, it is not necessary to decide in this case. In this case the administrator did not purchase anything he did not already own. He merely protected his own interest and that of his insane brother by buying in Cowan's interest and paying off the debts of the estate.

The recitals in his report of sale of the land do not estop the defendant from proving the contract with plaintiff. To create an estoppel, it must be shown that the party against whom it is sought to invoke the estoppel has, by words or conduct upon which the party invoking the estoppel relied, induced him to change his situation in such a way that it would result in loss to him to show the real facts. 16 Cyc. 722; *Horn v. Cole,* 51 N. H. 287, 12 Am. Rep. 111; *Clark v. Parsons,* 69 N. H. 147, 39 Atl. 898, 76 Am. St. Rep. 157. The filing of the report did not deceive plaintiff. He was not induced to alter his position with reference to the property in any way. All he did was done before the report was filed. The filing of the report did not estop defendant from asserting his right against the plaintiff. The report was filed as it was pursuant to the agreement with plaintiff. No one was defrauded. The only persons interested were the creditors and the plaintiff, defendant, and their insane brother.

The creditors were paid, and the brothers' rights were safeguarded by the contract.

No opinion is expressed as to the effect of the report. as to others than parties to the contract.

The judgment should be affirmed.

By the Court: It is so ordered. .