BOYD et al. v. HANKINSON et al.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1899.)

No. 274.

1. EXECUTION—LEVY ON REALTY OF CORPORATION—EFFECT OF SUBSEQUENT DISSOLUTION OF CORPORATION.

Under the laws of South Carolina, after an execution has been levied on real estate of a corporation defendant, neither the lien created thereby, nor the validity of a sale thereunder to convey title, is affected by the dissolution of the corporation.

2. CORPORATIONS—EFFECT OF DISSOLUTION—RIGHT TO SUE.

The dissolution of a corporation by the forfeiture of its charter or otherwise does not deprive it of the power to convey its property, or to maintain or defend suits relating to the settlement and winding up of its business.

3. TRUST—PURCHASE OF PROPERTY AT JUDICIAL SALE—FIDUCIARY RELATIONS OF PARTIES.

Defendant made an offer for the purchase of real estate owned by a corporation, which was accepted by its officers; but, before a conveyance was made, it was learned that the charter of the corporation had been declared forfeited by the authorities of the state in which it was chartered, and, in the belief that the company could not then convey a good title, it was agreed that the property should be sold under a judgment against the company held by one of its officers, bought in by him, and conveyed to defendant under the agreement for sale, and meantime defendant was placed in possession. At the sale, the officer being present only by an agent, defendant bid in the property for a sum much less than the agreed price, and received a deed therefor from the sheriff. *Held*, that his relation to the property and the corporation was such that

92 F.—4

he held the title so acquired in trust, and would not be permitted to retain the property without paying the remainder of the purchase money due under his agreement.

4. CORPORATIONS—SUITS BY STOCKHOLDERS AFTER DISSOLUTION.
Stockholders and creditors of a corporation may maintain a suit in equity, after its dissolution, to recover assets wrongfully appropriated or withheld, and to have them applied for their benefit.

Appeal from the Circuit Court of the United States for the District of South Carolina.

This was a suit in equity by James Boyd, Martin Lane, and William H. Castle against Luther H. Hankinson and Owen Alderman. From a decree dismissing the bill (83 Fed. 876), complainants appeal.

William H. Fleming, for appellants.

D. S. Henderson, for appellees.

Before GOFF, Circuit Judge, and PAUL and WADDILL, District Judges.

GOFF, Circuit Judge. The complainants below, citizens of the states of Pennsylvania and Delaware, filed their bill in equity in the circuit court of the United States for the district of South Carolina against the defendants below, who were citizens of that state. The complainants sued as stockholders and creditors of the Southern Pine Fiber Company, a corporation chartered by the state of New Jersey, and doing business in the state of South Carolina. It was alleged in the bill of complaint: That the Southern Pine Fiber Company was the owner of three acres of land situated in North Augusta, Aiken county, S. C., with the buildings thereon, and certain machinery and other personal property placed therein. That the charter of said company had on May 4, 1897, been declared forfeited and void by the governor of New Jersey, as provided by the laws of that state. That on March 5, 1897, said company, acting through William H. Castle, its treasurer, had offered, in writing, to sell the said property, real and personal, to the Hankinson Lumber Company, for the sum of $5,000, of which $1,000 was to be paid in cash, and the residue in four annual payments of $1,000 each, with interest; the title to said property to remain in said company until paid for, and a bond for title to be made to the purchaser; the offer to be subject to the approval of the stockholders, and to be accepted or rejected within 10 days from March 5, 1897. That on May 20, 1897, one J. L. Hankinson wrote to said treasurer, saying, among other things:

"We have persuaded my father, Luther H. Hankinson, who is interested with us, to buy the Pine Fiber property; and he authorizes me to make you an offer of $4,500, of which $1,000 will be cash, and the bal. in four equal installments, with interest; terms same as option. Kindly give this your prompt attention."

That on May 24th such offer was declined by said company. That on June 7, 1897, Luther H. Hankinson, through his agent, J. L. Hankinson, accepted said offer of sale, in writing, in the following words:

"My father has decided to purchase the Pine Fiber property at $5,000, on the terms and conditions named in your letters to me, viz. $1,000 cash; balance, equal payments, in one, two, three, and four years, with interest. This

purchase to cover everything except the machinery used in the manufacture of pine fiber, such machinery being now stored subject to your order. Have papers prepared in the name of L. H. Hankinson, and send same to Mr. Jackson, or any one in Augusta, and the notes will be signed, and check given, upon delivery of your bond for titles."

That thereafter, in July, 1897, it was ascertained that the charter of said company had been forfeited, and that it was then agreed by those representing said company and said Luther H. Hankinson that a proper and better title could be secured to said property by having the same sold under certain judgments held by and in the name of said William H. Castle, which had been rendered some years prior thereto, by the court of common pleas of Aiken county, S. C., and that in accordance with such understanding, and for the purpose of perfecting the title so as to carry out the said contract, executions were levied upon the property, and it was advertised to be sold on the 4th of October, 1897, at which sale it was intended that Castle should purchase the property, and then convey it to Hankinson for the sum of $5,000, the sole object of such public sale being to perfect the title. That, in an effort to carry out in good faith the contract of sale, Castle on September 13, 1887, wrote the son and agent of Luther H. Hankinson as follows:

"Messrs. Fleming & Alexander notify me that the sheriff will sell the mill property on the first Monday in October next. I have instructed them to bid up, if necessary, to the amount we agreed to sell to you. Will you also look after the matter? I am in hopes that it will be knocked down at a less figure, so as to save sheriff's costs. As soon as the property stands in my name, I will transfer it to your father,—as soon as proper papers are prepared."

That Castle instructed said firm (Fleming & Alexander) to bid for him to the amount of $5,000, if necessary, but that the member of the same who had given the matter attention was absent, and the instructions were overlooked by the partner who was then in charge, he thinking that he was only to bid to cover the amount of the executions levied on the property; and, as he believed that there would be no opposition bids (it being generally known that the sale was being made simply to perfect the title), he instructed his representative to attend the sale, and bid to the amount due on said executions,—a sum between $1,800 and $1,900. That there were but two bidders at the sale, the said Luther H. Hankinson and the representative of Fleming & Alexander, who in fact was representing said Castle, and that, as such representative only bid to the amount of said executions, the property was sold by the sheriff (the defendant Alderman) to said Hankinson for $2,000, which was paid by him to the sheriff, who made such purchaser a deed for the property, and that he is now in the possession of the same. That, on the afternoon of the day of the sale, Fleming & Alexander communicated with the purchaser, advising him of the written instructions which had been sent them by Castle, and expressing the hope that the purchase had been made by him (Hankinson) for the purpose of carrying out the contract with Castle, but that said purchaser refused to carry it out, and stated that he had bought the property in his own name, and would continue to hold it for his own use. That said Castle has never accepted the

proceeds of such sale, which are still in the hands of the sheriff. Complainants prayed that a receiver be appointed to take charge of the assets of the Southern Pine Fiber Company, and sell the same, under the directions of the court, the proceeds to be distributed, as should be found proper, among the complainants and other creditors and the stockholders of such defunct corporation; that the deed from the sheriff to Luther H. Hankinson be declared void, and be canceled; that, should such deed not be canceled, then Hankinson be required to carry out his contract, and pay over to the proper parties the further sum of $3,000, which he had so agreed to pay,—and for such other and further relief as would be proper under the circumstances.

When the bill, which was duly verified, was presented to the court, an order was passed, on the 29th day of October, 1897, appointing a receiver as prayed for, directing him to take charge of the property, and investing him with the powers usual under such proceedings. Such order also directed said defendant Luther H. Hankinson to show cause why a perpetual injunction should not issue against him, restraining him from setting up any title to the property under and by virtue of the deed made to him by such sheriff.

The defendant Luther H. Hankinson filed his answer, in which, after certain formal statements, denials, and admissions, he sets up that there were certain negotiations between the Hankinson Lumber Company and himself, with some of the officers of the Southern Pine Fiber Company, relating to the purchase of said property, but that the same had not been carried into a permanent contract or agreement before he was informed that the charter of such company had been forfeited; that he had no information that such negotiations ever had the sanction of the directors or stockholders of said last-named company; that, after the alleged forfeiture of the charter of the company, he distinctly informed those who were so negotiating with him that they must, before he would agree to purchase the property, give him a bond of indemnity, if the property was sold at public outcry, that a warranty title would be made to him of the property, no matter at what price the same was purchased; and that said parties and their attorneys distinctly declined and refused to give such guaranty, hence he concluded that all such negotiations were at an end, and that he was not, in equity, bound to carry out any such agreement. Said defendant claimed further that he was the owner in fee simple, and in possession, of the land and other property so purchased at public sale from the sheriff, that his title was valid, and that he should not be disturbed in his possession.

The defendant Alderman, sheriff of Aiken county, also filed his separate answer, in which, after alleging that he was a stranger to, all and singular, the matters set out in the bill, except so much thereof as alleged that he did sell the land described therein; and, as to that, he admitted that the same was sold by him at public outcry, under directions from Fleming & Alexander, attorneys at law, who represented certain judgment creditors of the Southern Pine Fiber Company. He set out that, at such sale, Luther H. Hankinson, being the highest and last bidder, became the purchaser of said property at the price of $2,000, which sum was paid in cash, and that he holds the same

subject to the order of court, and that it is true that he has made and delivered to such purchaser a deed for the property, conveying to him all the right, title, and interest of the Southern Pine Fiber Company in and to the property so described.

To these answers replications were filed, testimony was duly taken, and the cause submitted, when the court below entered a decree dismissing the bill. From the decree so entered the complainants sued out this appeal, alleging a number of errors in the proceedings below, a few of which, only, we find it necessary to discuss.

We will first consider the questions raised relating to the sale of the property of the Southern Pine Fiber Company. Was that sale a valid one, and did it pass the title to the property to the purchaser, Luther H. Hankinson? Due notice was given of the sale, and the proceedings were in accordance with the South Carolina statute relating thereto. The judgments had been regularly obtained against the Southern Pine Fiber Company, the executions had been properly levied in 1893, and the active energy of the same was in force for 10 years from the date of the levy. The rights of all the parties had been fully determined, and it was conceded that the complainant Castle then held and controlled said judgments. It was by his direction that the sheriff proceeded with the sale, and he evidently ordered it, that he might be able to comply with his agreement with Hankinson. No new or additional proceedings were required in the court of Aiken county, as the power to sell already existed, under the vested rights given by the levy of the executions. Even if the charter of said company had become forfeited, still the sale could have been made, for the death of a party against whom execution has been issued does not prevent the sale of the property which had been duly levied on. Taylor v. Doe, 13 How. 287; Fishburne's Case, 1 Spear, 347. The same rule is applicable to corporations as to natural persons, and so, if the charter was in fact forfeited,—a question that it is not necessary for us to decide,—still the right to sell was not affected thereby. But, even if the charter was forfeited, the company, while it would not be able to continue the transaction of business, would still be authorized to close out its affairs and dispose of its property, in the interest of its creditors and stockholders. And this is true, independent of the New Jersey statute on that subject, which is as follows:

"Sec. 53. All corporations whether they expire by their own limitation or be annulled by the legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established." Sess. Acts N. J. 1896, p. 295.

The sale was therefore regular, and no effort was made to set it aside because of inadequacy of price, except as this suit may be considered such. The title to said property passed to Luther H. Hankinson by the sheriff's deed, and is vested in him to-day.

We now have to determine whether or not, under all the circumstances of this case, equity and good conscience will permit said defendant to retain that title without accounting for the value of the

property, to the sum, at least, that he had agreed to pay for it. It is true that the offer of March 5, 1897, made by the Southern Pine Fiber Company, to sell its property to the Hankinson Lumber Company, was not accepted by the latter. It is also true that the proposition of Luther H. Hankinson, made under date of May 20, 1897, was declined by the Southern Pine Fiber Company. Thereafter, on June 7, 1897, Hankinson renewed his offer, increasing the amount, and changing the detail connected with it; and it was this proposition that was under consideration when, in July, 1897, the parties in interest concluded that, as the charter of the company had been declared void, a sale under the executions then in force would be the preferable plan of procedure. From this time on, the only open question was as to the best way to convey the title to Hankinson. The property was regarded as sold to Hankinson, who on August 2, 1897, wrote to Castle, saying, "We are now making improvements on said property upon faith of your promise to make us necessary papers;" and on August 10, 1897, Castle replied, saying he regarded the property sold to Hankinson, and that he would refuse any other offer for it. The manner of securing the title to Hankinson, and of making the sale and the deed, was still under consideration. Without referring specially to the testimony, we find that it shows that J. L. Hankinson was the agent of the defendant Luther H. Hankinson, and that the latter was bound by the acts and negotiations of the former looking to the purchase of the property of the Southern Pine Fiber Company, and that said defendant had agreed to purchase the property of that company, as set forth in the bill, for the sum of $5,000; that he further agreed to a public sale of said property under the executions then in the hands of the sheriff, for the purpose of perfecting the title, the understanding being that the property would be purchased by or for Castle, individually, at as low a figure as possible, and by him then be conveyed to said defendant for the sum of $5,000, the purchase money to be for the benefit of the creditors and stockholders of said company; that, previous to the sale by the sheriff, the defendant Luther H. Hankinson had, on the faith of his agreement with Castle to purchase the property, entered into the possession of the same, and made certain improvements thereon; that after such agreement, such taking possession of the property, and such improvements made thereon, the defendant Luther H. Hankinson attended the sale and purchased the property, without having advised Castle, or any one representing him, that he did not consider the agreement to purchase binding on him, and that he intended to bid in his own behalf; that both Castle and the defendant Hankinson believed at the time they agreed to a public sale of said property that the charter of the Southern Pine Fiber Company had been legally annulled, and that such sale was the safer course to pursue in order to vest a perfect title to the property in said defendant, and at the same time best protect the interests of the creditors and stockholders of that company.

The facts being as we have found them, what, in good conscience, should be required of the parties? If Castle had purchased the property at the public sale, could Hankinson have compelled him to convey it under the previous agreement? Answering this in the affirma-

tive, as we do, it follows that if Hankinson had not bid for the property, and Castle had purchased it, the latter, had he sued the former for specific performance, would have been entitled to a decree in his favor. The equities of the case are now plainly apparent. The relations existing between Hankinson, Castle, and the Southern Pine Fiber Company were such that it would be unconscionable to allow said defendant to hold the property at the price of $2,000, when he was under contract to give $5,000 for it, and the only object of the sale at sheriff's outcry was to enable him to have a good title to the same. The contention of counsel for appellees, that the original offer of sale was rendered inoperative because it contained the clause, "subject to the approval of the stockholders of said Southern Pine Fiber Company," and that as a matter of fact such stockholders did not approve of the terms of sale, is without merit, for the reason that thereafter both Castle and Hankinson concluded that, as the charter of the company had been forfeited, the stockholders were therefore without authority to act, and consequently the plan to sell at public sale was proposed and agreed to. A court of conscience will not permit a party to profit by his own wrong, and in this case we cannot allow the defendant Hankinson to claim for himself individually the property conveyed to him by the sheriff, unless he first accounts to Castle, who represents the creditors and stockholders of the Southern Pine Fiber Company, for the difference between his bid at the public sale and the price he had agreed to give for the property. He holds the title in trust for them, and, unless he pays said difference, the court should either direct a sale of the property, and apply the proceeds for that purpose, or set aside the sale as made by the sheriff and direct a resale of the same, returning to Hankinson the purchase money so paid by him.

Complainants sue as creditors of the Southern Pine Fiber Company, also as its stockholders; and equity will entertain such a suit, even if the charter of the company had been forfeited before process issued, and will decree that the assets of such company be applied for the benefit of all its creditors and stockholders. It will be better to bring the said company before the court,—a course not resorted to heretofore because of the mistaken idea that it would have been improper, on account of the alleged forfeiture of the charter of that company. But, as we have seen, the company could have prosecuted and defended suits, could have closed its business and have disposed of its property, even though its charter had been undoubtedly forfeited, and due announcement of the same had been made under the law. The decree appealed from will be reversed, and this cause will be remanded to the court below, with instructions to proceed therein in the manner indicated in this opinion. Reversed.