BRUUN v. COOK.

1. TAXATION—NOTICE OF RECONVEYANCE—SEPARATE DESCRIPTIONS.
   Notice of reconveyance by purchaser at tax sale must show amount paid for each description included therein where separate descriptions were sold separately, so that individual upon whom notice was served could determine therefrom amount he must pay in order to redeem from any description.

2. SAME—DEFECTIVE NOTICE OF RECONVEYANCE—TITLE ACQUIRED.
   Notice of reconveyance which failed to comply with rule requiring that amounts paid for various separate descriptions therein be shown where they were sold separately *held*, fatally defective and grantees under State tax deed acquired no title.

3. EJECTMENT—PLAINTIFF RECOVERS ON STRENGTH OF OWN TITLE.
   Plaintiff in action of ejectment must recover, if at all, on the strength of his own title and not because of weakness or want of title of defendants.

4. CORPORATIONS—FRANCHISES—"TO BE"—"TO DO BUSINESS."
   The franchise to be a corporation belongs to the stockholders and the franchise to do business as a corporation belongs to the corporation.

5. SAME—ACCEPTANCE OF FRANCHISE CONSTITUTES A CONTRACT.
   The right and privilege to be a corporation granted by the State by general law upon certain conditions, express or implied, constitutes, when accepted, a contract between the corporation, or the corporators or members, and the State.

6. CONSTITUTIONAL LAW—CORPORATIONS—IMPAIRMENT OF CONTRACTS.
   Contract between corporation or corporators and the State, comprised by franchise to be a corporation, may not be impaired by subsequently enacted statutes in the absence of an express reservation so to do.

7. CORPORATIONS—SUSPENSION OF CORPORATE POWERS.
   Suspension of corporate powers for failure to file annual reports and pay annual fees for privilege of doing business does not dissolve the corporation, suspend power to be a corporation, or affect powers of the stockholders (Act No. 327, § 87, Pub. Acts 1931).

8. SAME—PERIOD FOR WINDING UP AFFAIRS—PURPOSE.
   Statutory provision of three-year period for liquidating and winding up affairs of dissolved corporation was provided to enable the corporation to function as such for the full period of its corporate existence (Act No. 327, § 75, Pub. Acts 1931).

9. SAME—DISSOLVED CORPORATION—WINDING UP AFFAIRS.
   Dissolved corporation, during a three-year period provided by statute, has full power and authority to do everything requisite and necessary to wind up its affairs in a legal and orderly manner and to dispose of and convey its property (Act No. 327, § 75, Pub. Acts 1931).

10. SAME—TITLE TO CORPORATE PROPERTY—DIRECTORS AND OFFICERS.
    A corporation belongs to its stockholders and directors and officers have no title to its property but are mere agents or trustees for the stockholders to perform corporate acts.

11. SAME—LEGAL FICTION.
    A corporation is a legal fiction.

12. SAME—ACTS THROUGH OFFICERS AND AGENTS.
    A corporation may act only through its officers and agents.

13. SAME—ELECTION OF OFFICERS TO WIND UP AFFAIRS.

No express statutory provision is necessary to authorize the stockholders of a corporation to elect officers to transact the business necessary to wind up its affairs, dispose of and convey its property and divide its assets since such power is implied from corporate existence itself.

14. SAME—IMPLIED POWERS—STATUTES.

Statute extending corporate existence for three years, requiring the disposition and conveyance of corporate property and the making of corporate reports necessarily implies power in the corporation by its proper officers and agents to do and perform the necessary acts to carry out the terms of the statute (Act No. 327, Pub. Acts 1931).

15. SAME—IMPLIED POWERS—ELECTION OF DIRECTORS AND OFFICERS.

At common law there was implied power in the corporation to elect directors and other suitable officers and agents to direct and govern its affairs and to conduct its business.

16. SAME—ELECTION OF OFFICERS—TIME.

The power to elect officers within a certain time does not take away the power implied as incident to the existence of the corporation.

17. SAME—ELECTION OF OFFICERS—COLLATERAL ATTACK.

Legality of election of corporate officers cannot be brought collaterally in question, but proceedings must be instituted for express purpose of trying and evicting them if not properly entitled to the offices which they have assumed to exercise.

18. SAME—FRANCHISE TO BE A CORPORATION—VOIDANCE.

Franchise to be a corporation becomes absolutely void without any judicial proceeding whatever only when the corporation for two consecutive years fails to file its annual report and to pay its franchise fees (Act No. 327, § 91, Pub. Acts 1931).

19. SAME—WINDING UP AFFAIRS AFTER FORFEITURE OF CHARTER.

Corporation, after forfeiture of its charter for failure to file annual reports and pay franchise fees for two years has full power and authority to do and perform every act requisite and necessary to be done to wind up its affairs (Act No. 327, §§ 75, 87, 91, Pub. Acts 1931).

20. SAME—COMMON LAW—REVERSION OF REAL ESTATE TO ORIGINAL GRANTOR—DEBTS.

At common law upon the civil death of a corporation all its real estate remaining unsold reverted back to the original grantor and his heirs and debts due to and from corporation were extinguished.

21. SAME—FORFEITURE OF CHARTER—WINDING UP AFFAIRS—CONVEYANCE TO TRUSTEE.

A corporation, after forfeiture of its charter and incidental with proceedings to wind up its affairs has authority to convey all its property to trustee, in trust, to be distributed among its shareholders with a view to winding up its concerns (Act No. 327, §§ 75, 87, 91, Pub. Acts 1931).

22. SAME—SUSPENSION OF POWERS—ELECTION OF DIRECTORS.

Stockholders of corporation whose powers were suspended for failure to file annual report and nonpayment of franchise fee had right to elect directors within two years (Act No. 327, § 87, Pub. Acts 1931).

23. SAME—ELECTION OF OFFICERS—COLLATERAL ATTACK—EJECTMENT.

Legality of election of officers of a corporation owning lands sold for taxes may not be inquired into in action of ejectment by trustee to whom corporation had conveyed all its property against purchasers at tax sale, notwithstanding one of the three stockholders had made an assignment for benefit of his creditors.

24. SAME—WINDING UP AFFAIRS—TRUSTS.

Trust created by corporate directors for purpose of distributing remaining assets of corporation incident to winding up its affairs did not constitute a corporation.

25. SAME—SUSPENSION OF POWERS—ELECTION OF OFFICERS—TRUSTS—EJECTMENT.

Deed, executed by corporate directors who were elected while corporate powers were suspended but before charter was forfeited, to trustee for purpose of distributing remaining assets incident to winding up corporate affairs, conveyed sufficient title to grantee to permit maintenance of action of ejectment, since such election was within powers implied in authority granted to do acts necessary to wind up affairs within three years after such delinquency (Act No. 327, §§ 75, 87, 91, Pub. Acts 1931).

Appeal from Otsego; Bilitzke (Edward A.), J. Submitted April 20, 1937. (Docket No. 127, Calendar No. 39,444.) Decided June 7, 1937.

Ejectment by John Bruun, trustee of the assets of T. E. Douglas Company, a Michigan corporation, against Fred E. Cook and Omar W. Werts. Judgment for defendants. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff.

*F. Norman Higgs* (*Clark & Henry,* of counsel), for plaintiff.

*William T. Yeo,* for defendants.

POTTER, J. Plaintiff brought ejectment against defendants. There was judgment for defendants and plaintiff appeals.

Plaintiff, claiming title to lot 2 and lot 3 of section 19, town 29 north, range 2 west, Otsego county, Michigan, as grantee of the T. E. Douglas Company, a Michigan corporation, brought ejectment against defendants who claimed title through two State tax deeds and a notice of right to reconveyance.

The T. E. Douglas Company was a Michigan corporation organized in 1904 for the statutory period of 30 years for the purpose of manufacturing, buying and selling of logs, timber and forest products, and carrying on a mercantile business in connection therewith. It owned much cut over land in Crawford and Otsego counties. In 1930, the company was not engaged in active business. The three stockholders prior to the transaction herein involved were Thomas E. Douglas and Edward S. Houghton, both of whom are deceased, and Marius Hanson who had made an assignment of all of his property for the benefit of his creditors and who died prior to the institution of this suit. The stock of Douglas and Houghton in the

corporation was assigned by the probate court to their respective heirs and stock in the company issued to them.

The heirs of Douglas and Houghton, together with Marius Hanson gave proxies to William B. Henry, of Bay City, to represent them at the annual meeting of the corporation held August 30, 1933, to elect a board of directors and to transact any business that might properly come before the meeting, and for the conveyance of all of its property to a trustee. William B. Henry, G. Barth and A. Brockmiller were elected directors. A proposed trust agreement with John Bruun, trustee, was presented at this meeting and approved by the stockholders and the board of directors was authorized to transfer all of the assets of the corporation to John Bruun, as trustee. Officers were elected by this board of directors on the same day. June 25, 1934, the directors authorized the officers to enter into the trust agreement with Bruun which had been previously approved at the meeting of the stockholders, and the corporate officers thereupon conveyed the assets of the corporation, including some 3,900 acres of land, to Bruun, as trustee, and plaintiff Bruun executed a declaration of trust. Such trust was created for the purpose of liquidating the assets of the corporation for the benefit of the stockholders. The T. E. Douglas Company filed its last annual report in August, 1930. The secretary of State granted an extension of time for report due in 1931 to January 20, 1932.

Defendants obtained two tax deeds from the State, both dated June 20, 1933, for the premises in suit for the taxes of 1929. Both descriptions were combined in the notice of reconveyance and the return shows it was served upon Marius Hanson individually August 24, 1933. November 2, 1934, plaintiff deposited a check with the county clerk of Otsego county

for the redemption of the premises in question and notified defendants he desired to redeem.

The trial court held that, although the notice to reconvey was defective, plaintiff had no standing in court because the powers of the T. E. Douglas Company were suspended and it could not elect officers and directors for the purpose of winding up the affairs of the corporation, and declared the deed void which had been executed by the T. E. Douglas Company to Bruun.

The trial court correctly held that where separate descriptions of property sold separately were included in one tax notice, it must appear from such notice how much was paid for each separate description so the individual upon whom the notice was served could determine therefrom the amount he must pay in order to redeem from any description. The notice served did not comply with the rule and was insufficient and fatally defective. *Ensley* v. *Coolbaugh,* 160 Mich. 299; *G. F. Sanborn Co.* v. *Johnson,* 148 Mich. 405; *Jackson* v. *Mason,* 143 Mich. 355. This notice of reconveyance being insufficient, defendants acquired no title to the premises.

Plaintiff in ejectment must recover, if at all, on the strength of his own title and not because of the weakness or want of title of defendants. *Bird* v. *Stimson,* 197 Mich. 582; *Kushler* v. *Weber,* 182 Mich. 224; *Powell* v. *Pierce,* 168 Mich. 427; *Webber* v. *Pere Marquette Boom Co.,* 62 Mich. 626; *Sanborn* v. *Loud,* 150 Mich. 154 (121 Am. St. Rep. 614).

The trial court held the president and secretary of the T. E. Douglas Company had no authority to execute the quitclaim deed to plaintiff of July 9, 1934; that the stockholders of the T. E. Douglas Company had no authority to elect officers and directors, for the purpose of winding up its affairs by transferring its assets, at the time when the corporation was de-

linquent in filing annual reports; and, therefore, plaintiff had no title upon which he could maintain an action of ejectment against defendants. This is the only question of importance in the case.

There is a plain distinction between the franchise to be a corporation and the franchise to do business as a corporation. The franchise to be a corporation belongs to the stockholders—and the franchise to do business as a corporation belongs to the corporation. The general or corporate franchise belonging to the corporators must not be confounded with special or secondary franchises which belong to the corporation. *Union Steam Pump Sales Co.* v. *Secretary of State,* 216 Mich. 261; Joyce on Franchises, § 38; 2 Fletcher on Corporations (1st Ed.), p. 2109; 3 Thompson on Corporations (2d Ed.), § 2864; 14 C. J. pp. 160, 161.

The primary franchise of a corporation, the right and privilege to be a corporation, vests in the individuals who compose the corporation. This right granted by the State by general law upon certain conditions, express or implied, constitutes, when accepted, a contract between the corporation, or the corporators or members, and the State.

"The charter of a corporation, whether it is created by a special act or formed under a general corporation law, is a contract between the corporation, or the corporators or members, and the State. It is a contract between the State and the corporation, between the corporation and the stockholders, and between the stockholders and the State." 14 C. J. pp. 161, 162.

As said in *People, ex rel. Attorney General,* v. *Railroad Co.,* 145 Mich. 140, 147:

"The defendant's charter is a contract. It is said by defendant's counsel that it was not a contract

*inter partes,* but in the nature of a deed poll, and is said to be a contract'created by law. What seems to us a preferable statement is that the law presumes assent to the terms of a contract contained in a deed poll from its acceptance by the grantee. The law does not in such case *impose* a contract upon the party, but by the acceptance of a deed poll the grantee becomes an assenting party to its terms and the contract is an express one.''

This contract between the corporation and the State may not be impaired by subsequently enacted statutes in the absence of an express reservation so to do. This is unimportant here because by Const. 1908, art. 12, § 1, it is provided:

''All laws heretofore or hereafter passed by the legislature for the formation of or conferring rights, privileges or franchises upon corporations and all rights, privileges or franchises conferred by such laws may be amended, altered, repealed or abrogated.''

Act No. 327, § 91, Pub. Acts 1931, provides that if any profit corporation shall for two consecutive years neglect or refuse to file its annual report or pay its corporation fees, the charter of such corporation shall be absolutely void without any judicial proceeding whatsoever. And such corporation shall be wound up in any manner provided by this act, unless the secretary of State shall, for good cause shown, extend the time for the filing of such report, or the payment of such fee, as the case may be.

The corporation in question failed for two consecutive years to file its report and to pay its franchise fee. The franchise fee for 1930 was not paid on August 31, 1931, or thereafter, and on August 30, 1933, the day before the expiration of the two years, the corporate meeting was held at which directors of

the corporation were elected and at which corporate officers were elected and the transfer of the property to plaintiff authorized.

Act No. 327, § 87, Pub. Acts 1931, provides:

"If any corporation neglects or refuses to make and file the reports and/or pay any fees required by this act within the time herein specified, and shall continue in default for 10 days thereafter, *its corporate powers shall be suspended thereafter,* until it shall file such report, and it shall not maintain any action or suit in any court of this State upon any contract entered into during the time of such default."

By Act No. 327, § 87, Pub. Acts 1931, the corporate powers of the corporation were suspended. This did not dissolve the corporation. It withdrew from it the power granted by the State to do business. The corporation was shorn of its franchise to do business, its secondary franchise. But the corporation was not dissolved. The franchise to be a corporation was not suspended. The powers of the stockholders were not affected. The charter of the corporation and the corporate organization still subsisted. It is only when the corporation, or its officers or agents, neglect for two consecutive years to file its annual report or pay its corporation fees that the corporate charter becomes void and the corporation defunct. Act No. 327, § 91, Pub. Acts 1931. Even after the corporation is dissolved, it still continues a body corporate for three years for the purpose of administering its estate, disposing of and conveying its property and closing its business.

Act No. 327, § 75, Pub. Acts 1931, provides:

"Any corporation whose charter expires by limitation, or which corporation is otherwise dissolved, shall nevertheless be continued a body corporate for the term of three years from such expiration or dis-

solution for the purpose of prosecuting and defending suits by or against it, and of enabling it to settle and close its business, to dispose of and convey its property, and to divide its assets but not for the purpose of continuing the business for which such corporation shall have been established.''

What powers may a private corporation for profit exercise during the three years immediately subsequent to its dissolution? There can be no question that by the express terms of the statute, it remains a body corporate—that is, a corporation legally existing, 13 C. J. p. 1263, for certain specific purposes, *viz.*: for the purpose of prosecuting and defending suits by or against it, and of enabling it to settle and close its business, to dispose of and convey its property, and to divide its assets but not for the purpose of continuing in business.

There is no provision in the statutes providing for the election of officers of a corporation during this three-year period, but it is expressly authorized to settle and close its business, dispose of and convey its property, and divide its assets. The corporation is empowered to continue as such for the purpose of winding up its affairs. This three-year period for liquidating and winding up its affairs was provided to enable the corporation to function as such for the full period of its corporate existence. As said in *Ruggles* v. *Buckley & Douglas Lumber Co.*, 210 Mich. 58, 65:

"The board was under no obligation to anticipate the expiration of its corporate existence by making preparations for its dissolution. Under the statute (3 Comp. Laws 1929, § 11335), it may continue as a body corporate for the term of three years thereafter, during which time its affairs must be settled.

The purpose of this section was well stated in *Bewick* v. *Alpena Harbor Improvement Co.,* 39 Mich. 700:

" 'The object of this clause was not to limit, but to enlarge the corporate privileges, so that corporations whose existence for general purposes was nearing its end might enjoy the advantage of doing general business during the whole charter period, instead of being compelled to begin winding up their affairs before it ended.' "

Such corporation during this period has full power and authority to do everything requisite and necessary to wind up its affairs in a legal and orderly manner and to dispose of and convey its property. The dissolution of a corporation at common law entails a loss to corporate property and, to avoid this, the statute was passed.

A corporation belongs to its stockholders. The directors and officers of a corporation have no title to its property. They are mere agents or trustees for the stockholders to perform corporate acts. *Rossi* v. *Caire,* 174 Cal. 74 (161 Pac. 1161). A corporation is in a sense a legal fiction. *Chicago & Grand Trunk R. Co.* v. *Miller,* 91 Mich. 166. It was said by Chief Justice Marshall to be "an artificial being, invisible, intangible, and existing only in contemplation of law." *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. (17 U. S.) 518, 636. Regardless of the accuracy of this definition, it is obvious a corporation may act only through its officers and agents and no express statutory provision is necessary to authorize the stockholders of a corporation to elect officers to transact the business necessary to wind up its affairs, dispose of and convey its property, and divide its assets. That power is implied from the very nature of a corporation, from corporate existence itself. The statute extending corporate existence for three years, requiring the disposition and conveyance of corporate property, and the making of corporate re-

ports, necessarily implies the power in the corporation by its proper officers and agents to do and perform the necessary acts to carry out the terms of the statute.

"A corporation possesses implied power to elect directors and other suitable officers and agents to direct and govern its affairs and to conduct its business." 14A C. J. p. 49.

"Where the act is silent, and there is no prohibition, the power inheres in the corporation to hold an election. It is a necessity of its corporate existence, and is among the implied powers granted. This is familiar law." *Wright* v. *Commonwealth,* 109 Pa. 560 (1 Atl. 794), citing 2 Dillon on Corporations, p. 768; Angell & Ames on Corporations, § 124; *People* v. *Runkel,* 9 John. (N. Y.) 147, 157.

This was the rule of the common law. The power of election was incident to a corporation, and the power to elect officers within a certain time does not take away the power implied as incident to the existence of the corporation. Rolle's Abridgment, p. 514.

"The election of directors and other suitable officers or agents, for the direction and government of the affairs of the corporation, and the conduct of its business through the agency of such officers, pertain to the condition and nature of aggregate corporate bodies." *Hughes* v. *Parker,* 20 N. H. 58, 71.

The legality of the election of corporate officers cannot be brought collaterally in question, but proceedings must be instituted for the express purpose of trying and evicting them if not properly entitled to the offices which they have assumed to exercise. *Hughes* v. *Parker, supra.*

See, also, *Hurlbut* v. *Marshall,* 62 Wis. 590 (22 N. W. 852).

Act No. 327, § 87, Pub. Acts 1931, suspends the corporate powers of the corporation, but it does not affect its franchise to be a corporation. The franchise to be a corporation becomes absolutely void without any judicial proceeding whatever only when the corporation for two consecutive years fails to file its annual report and to pay its franchise fees in accordance with section 91 of the act. And, even after the expiration of that time, it has full power and authority to do and perform every act requisite and necessary to be done to wind up the affairs of the corporation. *Turney* v. *Morrissey,* 22 Cal. App. 271 (134 Pac. 335); *Boyd* v. *Hankinson,* 34 C. C. A. 197 (92 Fed. 49); *Rossi* v. *Caire, supra; Welsh* v. *Steinbaugh,* 64 Col. 177 (171 Pac. 62); *Hanan* v. *Sage,* 58 Fed. 651.

In *Folger* v. *Chase,* 18 Pick. (35 Mass.) 63, it is said of a statute authorizing corporations to wind up their affairs after the expiration of their corporate charters:

"This is a just and wise remedial law, and ought to be liberally expounded. By the principles of the common law, upon the civil death of a corporation, all its real estate remaining unsold, reverts back to the original grantor and his heirs; and the debts due to and from the corporation are extinguished. The object of the statute was effectually to guard against the inevitable consequences of this rule of the common law."

The corporation, after the forfeiture of its charter and incidental with the proceedings to wind up its affairs, had authority to convey all of its property to a trustee, in trust, to be distributed among its shareholders with a view to winding up its concerns. *Hanan* v. *Sage, supra.*

The corporation did not cease to exist upon its charter becoming absolutely void in accordance with the provisions of Act No. 327, § 91, Pub. Acts 1931, because, by the provisions of section 75 of that act, it could continue to be a body corporate for the term of three years after such dissolution for the purpose of enabling it to close up its business, though it existed only for the purpose of winding up its corporate business and closing up its concerns. But, to do this, it had full control over all its property, and could dispose of it for the purposes indicated in the statute. *Hanan* v. *Sage, supra.* This was the rule recognized in *Rossi* v. *Caire, supra; Turney* v. *Morrissey, supra; Boyd* v. *Hankinson, supra;* and by *Grand Rapids Trust Co.* v. *Carpenter,* 229 Mich. 582.

We think the trial court erred in holding the corporation could not elect officers during the period its corporate powers were suspended. The right to elect directors of a corporation was vested by the corporate charter in the stockholders or members of the corporation. That charter remained in full force and effect so far as it conferred the franchise to be a corporation. The election of officers of the corporation may not be here inquired into, though at that time Marius Hanson had made an assignment of his property for the benefit of creditors. The trust created by the directors of the corporation, of which plaintiff was the trustee, did not constitute a corporation.

Judgment reversed, with costs, and case remanded with instructions to enter judgment for plaintiff.

Fead, C. J., and North, Wiest, Butzel, Bushnell, Sharpe, and Chandler, JJ., concurred.