BENTON HARBOR FEDERATION OF WOMEN'S
CLUBS *v.* NELSON.

1. DEEDS—PRESENT VESTING OF AN INTEREST—POSTPONEMENT OF
POSSESSION.
> If an instrument disposing of real estate, whatever its form
> or mode of execution, passes a present interest which vests
> from the time of its execution, it will be a deed, though the
> possession and enjoyment of the estate granted in it do not
> accrue to the grantee until a future time.

2. WILLS—FORM—POSTPONEMENT OF VESTING OF INTEREST.
> If an instrument, though in form a deed, does not convey any
> vested interest, right, or estate until the death of the person
> executing it, it will be regarded as testamentary and revocable.

3. EXECUTION OF INSTRUMENTS—INTENT—PAROL EVIDENCE.
> It is permissible to go outside of a writing disposing of real
> estate to ascertain the character of the writing, not to supply
> an intention which cannot be found in it but to ascertain with
> what intention the execution of the instrument was accom-
> panied.

4. DEEDS—INTENT—EVIDENCE—CONSTRUCTION BY PARTIES.
> The intent of the parties in executing an·instrument, in form a
> warranty deed, may be gathered from the instrument itself,
> if unambiguous, or from the surrounding circumstances and
> the construction that the parties placed upon the instrument.

5. SAME—RESERVATION OF LIFE INTEREST IN GRANTORS—EXECUTION
—DELIVERY.
> Instrument, in form a warranty deed, whereby grantors, a hus-
> band and wife, purported to convey their residence to incor-
> porated federation of women's clubs in the vicinity, which
> contained a clause reserving life use to grantors "and the
> survivor thereof; that is to say, that no part of this con-
> veyance shall become effective until after the death of the
> grantors * * * upon the death of the survivor of said grant-
> ors, this instrument shall become immediately effective,"
> which was delivered promptly and duly recorded, a sum of
> money raised by the grantee for the purpose of carrying out

the conditions of the instrument, and no act upon part of grantors to indicate that present title had not been conveyed therein until nearly 13 years later, *held*, a deed properly executed and delivered (Act No. 171, Pub. Acts 1903).

6. CORPORATIONS—FAILURE TO FILE ANNUAL REPORT AND PAY FEES —SUSPENSION OF POWERS—DISSOLUTION.

While the failure to file an annual report and pay the required fees suspends the corporate powers of a corporation for profit, it does not dissolve the corporation.

7. SAME—VOID CHARTER—CONTINUANCE AS BODY CORPORATE—EJECTMENT.

A corporation whose charter has become void for failure to pay its franchise fees does continue as a body corporate for the purpose of holding possession of its property and conserving it; hence it may maintain the possessory action of ejectment to preserve assets consisting of real estate.

8. SAME—EJECTMENT.

The right of a corporation to maintain an action of ejectment is dependent upon its right to own real estate.

9. EJECTMENT—ACTION BASED ON STRENGTH OF PLAINTIFF'S TITLE.

In an ejectment action, plaintiff must rely upon the strength of its own title as recovery will not be based upon the weakness of defendant's title.

10. CORPORATIONS—RIGHT TO OWN REAL ESTATE.

The right of a corporation to own real estate depends upon the statutes of the State by virtue of which the corporation is incorporated and, if such power is not expressly stated in the articles of incorporation, it may be so possessed as a necessary incident of existence or implied in order to carry out the purposes for which the corporation was organized.

11. SAME—NONPROFIT CORPORATION—RIGHT TO OWN REAL ESTATE.

A federation of women's clubs incorporated under an act for the incorporation of nonprofit corporations, whose charter did not expressly empower it to hold real estate, has the implied power under the provisions of the general corporation act to hold such real estate as was necessary to carry on its corporate purposes and the ownership of a memorial home would not be inconsistent with the purposes of the corporation involved (Act No. 171, Pub. Acts 1903; Act No. 327, § 10, Pub. Acts 1931).

12. SAME—RIGHT TO OWN REAL ESTATE—PARTIES—STATE.

In the absence of an express statutory prohibition no one but the State whose charter or franchises are exceeded or abused or some person directly interested in a corporation may question a corporation's right to own real estate.

13. DEEDS—GRANTING CLAUSE—HABENDUM.

The habendum clause of a deed is void when it is repugnant and contrary to the granting clause.

14. SAME—GRANT NOT DIVESTED, FRUSTRATED, ABRIDGED OR LESSENED BY HABENDUM CLAUSE.

The habendum clause of a deed can only affect the grant when it can be construed as consistent with the premises and cannot divest the grantee of the legal estate already granted nor frustrate, abridge or lessen the estate granted.

15. SAME — CONSTRUCTION — RESERVATION OF LIFE ESTATE IN GRANTORS.

In warranty deed whereunder grantors, a husband and wife, had conveyed their residence to an incorporated federation of women's clubs in the vicinity, language in same paragraph and following reservation of life estate in grantors and the survivor thereof providing "that no part of this conveyance shall become effective until after the death of the grantors," while contradictory of the granting clause, *held*, merely to show an excess of caution in reserving a life estate.

CHANDLER, C. J., and STARR and BUTZEL, JJ., dissenting.

Appeal from Berrien; Evans (Fremont), J. Submitted January 8, 1942. (Docket No. 63, Calendar No. 41,872.) Decided May 18, 1942.

Ejectment by Benton Harbor Federation of Women's Clubs of Benton Harbor, Michigan, a Michigan corporation, against Anna Nelson and another to secure possession of land. Judgment for defendants. Plaintiff appeals. Defendants cross-appeal. Reversed.

*Charles W. Gore,* for plaintiff.

*Ross H. Lamb* and *Myron H. Wolcott,* for defendants.

Sharpe, J.   This case involves an appeal from the circuit court of Berrien county in an ejectment action.

The material facts are not in dispute.   Plaintiff was incorporated in February, 1917, by virtue of the authority contained in Act No. 171, Pub. Acts 1903 (see 2 Comp. Laws 1915, § 9054 *et seq.*).   The term of existence of the corporation was 15 years. It was organized for the purpose of bringing "into relations of material helpfulness and cooperation, the various organizations of women of Benton Harbor and vicinity, and to secure united strength and action in promoting the vital interests of the day."

In November, 1923, James Stanley Morton and Carrie Heath Morton, his wife, executed an instrument in the form of a warranty deed running to plaintiff corporation as grantee, which was recorded November 30, 1923.   It purported to convey the Morton residence; and contained a clause reciting that the premises were to be permanently and exclusively devoted to "memorial, educative and other similar purposes."   The premises were to be known as the "Josephine Morton Memorial Home."   The grantee was to maintain the premises in repair, and insure the buildings.

The instrument also contained the following clause:

"The grantors herein reserve the right to occupy, use and enjoy all of said premises and property during the lives of said grantors, James Stanley Morton and Carrie Heath Morton, and the survivor thereof;

that is to say, that no part of this conveyance shall become effective until after the death of the grantors above named. Upon the death of the survivor of said grantors, this instrument shall become immediately effective."

When the above instrument was executed, the Mortons were possessed of considerable wealth, but their finances were gradually depleted until in 1936 they found themselves in severe financial straits.

The defendants, Anna and Hilda Nelson, were sisters, who for years had cared for Mr. and Mrs. Morton. They had loaned Mr. Morton money to operate his business and to maintain his home. In 1936, Mr. and Mrs. Morton, being in failing health and realizing that their estate would be small, executed a quitclaim deed to Anna Nelson, grantee. This deed was executed September 10, 1936, and purported to deed the Morton home to the said grantee. The deed reserved a life estate to the grantors and contained the following clause: "including any and all reversionary interest of said grantors."

Mr. Morton died October 1, 1936, and Mrs. Morton died in December, 1937. The defendants continued to live in the Morton home. During the month of February, 1940, plaintiff corporation brought an ejectment action against defendants. The trial court held that the deed of November 26, 1923, was properly executed and intended to convey the property to plaintiff, but that the charter under which plaintiff corporation existed gave it no right to own and hold real estate. Plaintiff appeals.

Of primary interest is the determination of the nature of the instrument executed by the Mortons in 1923. It is the claim of defendants that this instrument, being testamentary in substance, did not convey any present interest and was in effect a will and therefore subject to revocation.

In *Leonard* v. *Leonard,* 145 Mich. 563, we stated the rule for making such determination:

"Mr. Underhill states in his work on Wills (1st Ed.), § 37:

" 'The courts in determining whether an instrument disposing of real estate is a deed or a will are guided by the following considerations: If the instrument, whatever its form or the mode of its execution, passes a present interest which vests from the time of its execution, it will be a deed, though the possession and enjoyment of the estate granted in it do not accrue to the grantee until a future time. On the other hand, if the instrument, though it is in form a deed, does not convey any vested interest, right, or estate until the death of the person executing it, it will be regarded as testamentary and revokable.'

"As to the admissibility of parol evidence he says the court—

" 'May go outside of the writing to ascertain its character; *not to supply an intention which cannot be found in it,* but to ascertain with what intention the execution of the instrument was accompanied.' 1 Underhill on Wills (1st Ed.), § 39."

In *Moody* v. *Macomber,* 159 Mich. 657 (134 Am. St. Rep. 755), we again stated the rule:

"Gardner on Wills (1st Ed.), at page 24, states the rule as follows:

" 'The essential difference between a deed and a will is that a deed must pass a present interest in the property, although the right to possession and enjoyment may not accrue until some future time, while an instrument, which passes no interest until after the maker's death, is a will. * * * Regard must be had to the intention of the maker viewed in the light of the language of the instrument, and the circumstances surrounding the parties and attendant upon its execution'—citing cases."

Under the rule as above stated the intent of Mr. and Mrs. Morton in executing the instrument becomes of some importance. This intent may be gathered from the instrument itself, if unambiguous, or from the surrounding circumstances and the construction that the parties placed upon the instrument. In the case at bar, delivery of the 1923 instrument was not postponed, but was made promptly and the instrument was duly recorded. Subsequently, plaintiff raised the sum of $10,000 for the purpose of carrying out the conditions of the deed. Moreover, there was never any act upon the part of the grantors to indicate that present title had not been conveyed in 1923 until 1936, when the quitclaim deed was executed in favor of defendant Anna Nelson. The entire record sustains the claim that the parties to the 1923 conveyance considered that a present interest had been conveyed although its enjoyment was postponed until a future time. We, therefore, conclude that the instrument was a deed properly executed and delivered.

The next logical step in the solution of the problem before us is the determination of the right of plaintiff to maintain the action in the instant case. It appears that plaintiff corporation failed to file its annual reports or pay the necessary fees for the years 1935, 1936, 1937, and 1938 until December 4, 1939.

Defendants urge that the failure to file the reports and pay the required fees, as provided by statute, voided the charter of plaintiff corporation to the extent that it is without power to maintain an action in ejectment. The trial court held that the failure of plaintiff corporation to file its reports and pay the fees was cured by filing and paying them in 1939, their acceptance by the State of Michigan, and the issuance of a certificate by the corporation and se-

curities commission to the effect that plaintiff corporation was in good standing on January 1, 1940.

It is an established fact that when the deed of November 26, 1923, was executed and delivered, plaintiff corporation was under no disability by reason of failure to file reports and pay the required fees; and that by the provisions of section 64 of the general corporation act of 1931 (Act No. 327, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 10135–64, Stat. Ann. § 21.64]) the corporate existence of plaintiff was given perpetual life.

While it is true that failure to file an annual report and pay the required fees suspends the corporate powers of a corporation for profit, yet such failure does not dissolve the corporation. See *Bruun* v. *Cook,* 280 Mich. 484; *Mathews* v. *Life Insurance Co. of Detroit,* 284 Mich. 352. Assuming that plaintiff's charter was void on December 4, 1939, as contended by defendants, yet we think plaintiff had the right to institute the present action on February 17, 1940.

In *John J. Gamalski Hardware, Inc.,* v. *Wayne County Sheriff,* 298 Mich. 662 (136 A. L. R. 1155), plaintiff corporation brought a replevin action to recover possession of certain personal property. Defendant sheriff who had seized the property moved to dismiss the action on the ground that the corporation had no standing in court because its corporate charter had been voided for failure to pay its annual franchise fees. In discussing this question, we said:

"The sole question involved in this appeal is, Can a corporation whose charter has been forfeited for failure to file annual reports, and after the expiration of the three-year limit for winding up its affairs, maintain an action in a court of this

State to recover property belonging to it and unlawfully taken from it?     *     *     *

"There is no question in the instant case but that plaintiff's default for failure to comply with the provisions of the general corporation act has rendered its charter void. However, we have held a corporation does not cease to exist upon its charter becoming absolutely void; that it still continues a body corporate and remains a legally existing corporation for certain purposes. One of said purposes being, as we have inferentially held, and now hold, is to hold and have possession of its property and to conserve same, until due proceedings are had, either to cure the default which caused the loss of its charter, or to wind up its affairs in an orderly manner. There are many things it cannot do by reason of the prohibition of the statute; but to hold, protect and repossess its property is not one of the things it cannot do by reason of such prohibitory provisions. It would be doing a great injustice to the right to own and hold property for us to say that the courts of this State are closed to a defaulting corporation to continue the possession of its property and to conserve the same, by repossessing it by replevin from one who has unlawfully obtained and is unlawfully withholding possession thereof from its lawful owner. *Bruun* v. *Cook*, 280 Mich. 484; *Mathews* v. *Life Insurance Co. of Detroit*, *supra*; *Blake* v. *American Trust Co.*, 293 Mich. 618; and *Stott* v. *Stott Realty Co.*, 288 Mich. 35."

While the above case was a replevin action for the recovery of personal property and the instant case is an ejectment action for the possession of real estate, the principle involved in both actions is the same, the preservation of the assets of a corporation whose charter was voided for failure to pay its franchise fees.

It is next urged that plaintiff corporation has no capacity to own and hold real estate. Plaintiff

contends that it has such right, but that in any event, defendants cannot question plaintiff's capacity to own real estate. The purpose of the corporation as mentioned in its articles of incorporation makes no mention of owning real estate. We must assume that the right to bring the above action is dependent upon its right to own real estate. In an ejectment action, plaintiff must rely upon the 'strength of its own title; recovery will not be based upon the weakness of defendant's title.

The right of a corporation to own real estate depends upon the statutes of the State by virtue of which the corporation is incorporated. If such power is not expressly stated in the articles of incorporation, it may be so possessed as a necessary incident of existence or implied in order to carry out the purposes for which the corporation was organized. The capacity of a corporation to acquire and hold real estate is stated in the general corporation act, Act No. 327, § 10, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135–10, Stat. Ann. § 21.10):

"Every corporation, unless otherwise provided, or inconsistent with the act under which a particular corporation is or shall have been formed, shall have power: * * *

"d— to acquire, purchase, hold, and convey real and personal estate and to mortgage or lease any such real and personal estate with or without any of its franchises, corporate of otherwise; the power to hold real and personal estate shall include the power to take the same by gift, devise or bequest."

In our opinion, plaintiff corporation had the implied power to own such real estate as was necessary to carry on its corporate purposes. The ownership of such a "home" as is involved in this case would

not be inconsistent with the purposes of plaintiff corporation. Moreover, it is the rule in Michigan that no one but the State may challenge the powers of a corporation.

In *International Harvester Co. of America* v. *Eaton Circuit Judge,* 163 Mich. 55, 67 (30 L. R. A. [N. S.] 580, Ann. Cas. 1912A, 1022), we said:

"The rule that, where a corporation is incompetent by its charter to do an act, a private party cannot raise the question, but the sovereign alone can object, in a direct proceeding instituted for that purpose, applies here."

In 7 Fletcher, Cyc. on Corporations (Perm. Ed.), § 3448, p. 596, it is said:

"The rule is often stated that no one but the State can attack the title of a corporation to real property, which rule, stated in other words, is merely that where a transfer of real property is wholly executed on both sides, neither a party to the contract, a stranger, nor any one else than the State can attack the transfer as ultra vires a stranger occupying the same position as a party to the transfer."

In *Illinois Steel Co.* v. *Warras,* 141 Wis. 119 (123 N. W. 656), that court said:

"Inability of a corporation, foreign or domestic, to acquire title to any property cannot be raised by a stranger claiming the property unless, perhaps, such inability results from express statutory prohibition. Such merely *ultra vires* acts can be questioned only by persons directly interested in the corporation, or by the State, whose charter and franchises are exceeded or abused."

In the case at bar, defendants are not members of plaintiff corporation and may not challenge its right to own real estate.

The judgment of the trial court is reversed, and a judgment in ejectment will be entered in favor of plaintiff, with costs.

BOYLES, NORTH, and BUSHNELL, JJ., concurred with SHARPE, J.

NORTH, J. (*concurring*). I concur in reversal, and in so doing I am of the opinion that a particularly pertinent phase of the settled law of this jurisdiction, which is not stressed in the briefs, should be noted.

"It is well settled by numerous cases that when the *habendum* is repugnant and contrary to the granting clause it is void. It can only affect the grant when it can be construed as consistent with the premises. It cannot divest the grantee of the legal estate already granted him in the premises, nor can the *habendum* frustrate a grant complete before, or abridge or lessen the estate granted. (Citing numerous cases.) It must be conceded that the *habendum* cannot perform the office of divesting the estate already vested by the granting clause, and it is void if repugnant to the estate granted." *Smith* v. *Smith,* 71 Mich. 633, 640.

An informative note will be found in 84 A. L. R. 1054 and 111 A. L. R. 1078. See, also, *Holmes* v. *Holmes,* 215 Mich. 112.

In the instant case the recital in the deed quoted in the opinion of Mr. Justice SHARPE and upon which appellees rely must be construed in effect as a reservation of a life estate in the grantors. The reservation of this life estate is followed, in the same paragraph, by the statement (which I consider merely explanatory) that "no part of this conveyance shall become effective until after the death of grantors." The language "*no part* of this convey-

ance'' contradicts the granting clause. However, it neither immediately follows nor modifies the granting clause, but merely shows an excess of caution in reserving the life estate. It does not nullify the unequivocal granting clause of the deed wherein the grantors ''do by these presents, grant, bargain, sell, remise, release, alien and confirm unto the said party of the second part, and its successors forever, all those certain pieces or parcels of land'' described in the deed.

As above noted, I concur in reversal.

BOYLES, BUSHNELL, and SHARPE, JJ., concurred with NORTH, J.

STARR, J. (*dissenting*). I cannot agree with the conclusion of Mr. Justice SHARPE that the instrument of November 26, 1923, conveyed a *present interest* to plaintiff. Such instrument, in the form of a deed, expressly provided:

''The grantors herein reserve the right to occupy, use and enjoy all of said premises and property during the lives of said grantors, James Stanley Morton and Carrie Heath Morton, and the survivor thereof; *that is to say, that no part of this conveyance shall become effective until after the death of the grantors above named. Upon the death of the survivor of said grantors, this instrument shall become immediately effective.*''

The question is: Did the instrument pass a then present interest to plaintiff, or was it testamentary in character, effective only after the death of the grantors?

The words used by the grantors in such instrument are clear and unambiguous, and leave no room for doubt as to their intended meaning. In interpreting the above-quoted paragraph that portion of

the sentence preceding the semicolon and the part following the semicolon must be considered and construed together, because the words *"that is to say"* simply introduce another way of putting what has already been said. Fowler's Modern English Usage, p. 253, states that the words "that is to say" (the English equivalent of the Latin term *i.e.*) introduce "another way (more comprehensible to the hearer, driving home the speaker's point better, or otherwise preferable) of putting what has already been said." The grantors desired to make more comprehensible the meaning of the clause preceding the semicolon.

The grantors expressed themselves in plain and unambiguous language. As said in *Broffee* v. *Le Fils*, 183 Mich. 100, 107: "It would be hard to select fewer words to more aptly express the intention of the grantor." We should not go outside the instrument to seek a different intention or to supply an intention in contradiction with its terms. In *Michigan Chandelier Co.* v. *Morse*, 297 Mich. 41, 49, Mr. Justice Boyles said:

"The words themselves are not ambiguous or uncertain. We must look for the intent of the parties in the words used in the instrument. This court does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning."

See, also, 12 Am. Jur. pp. 746–748; *Paul* v. *University Motor Sales Co.*, 283 Mich. 587; *Dodson* v. *Dodson*, 142 Mich. 586.

The acts and doings of the parties subsequent to the execution and delivery of the instrument could not change the clear import of the words used.

Under the provision "no part of this conveyance shall become effective until after the death of the

grantors," the words of conveyance, *which were a necessary part of the instrument,* could not be operative until after the death of the grantors. Therefore, the instrument did not pass a present interest to plaintiff as grantee.

The following provisions of the instrument also express the clear intention of the grantors that it was not to become effective until after their death:

"For said considerations, parties of the first part hereby  *  *  *  transfer to said grantee (plaintiff)  *  *  *  all of the furnishings of said buildings *then belonging* to the parties of the first part (grantors).  *  *  *  This gift is intended to include the library in said home as it exists *when this deed takes effect.*  *  *  *

"They are well seized of the above-granted premises in fee simple; that they are free from all encumbrances whatever, and are subject only to the *conditions subsequent* hereinbefore expressly set forth."

This case is controlled by our decisions in *Leonard* v. *Leonard,* 145 Mich. 563, and *Moody* v. *Macomber,* 159 Mich. 657 (134 Am. St. Rep. 755), cited by Mr. Justice SHARPE. The provisions of the instruments construed in such cases were substantially the same as the provision of the instrument in the present case. In the *Leonard Case,* involving the question of whether the instrument was a deed passing a present interest, or was testamentary in character and, therefore, operative only after the death of the grantors, we said:

"The character of this instrument depends upon the effect given to the sentence:

" 'This deed is not to be operative until after the death of the parties of the first part hereto.'

"The words used cannot be said to apply simply to the enjoyment and possession of the property, but

to the entire force and effect of the instrument, and are repugnant to the creation of a present interest. * * *

"It is clear from the instrument itself and the expressions and acts of the makers at the time that it was testamentary in character, and intended so to be. * * *

"We can only say that where the words used, reasonably construed, do not pass a present interest, the instruments become the products of the courts, and not the grantors. Each case depends upon the peculiar wording of the instrument to be construed."

In the *Moody Case* the instrument, in the form of a deed, contained the following provision, p. 658:

" 'This deed is not to become operative until the death of the grantor, named herein.' "

In holding that such instrument was testamentary in character and in fact a will, we said:

"Applying the foregoing rule (Gardner on Wills (1st Ed.), p. 24, quoted by Mr. Justice SHARPE) to the case at bar, we find that there is no ambiguity in the language used. * * *

"These words can have but one meaning, viz., that *no interest* passed to the grantee thereunder until the happening of the event described (death of grantor). It is manifest that the instrument cannot be *inoperative,* as provided by its terms, and at the same time *operative,* to convey a present interest to be enjoyed by the grantee, at the death of the grantor. * * *

"The instrument, though in form a deed, was in fact a will." (See cases cited on page 661.)

The two cases above discussed conclusively establish that the instrument involved in the present case was not a deed passing a present interest, but was, in legal effect, testamentary in character.

In the present case it is argued that the delivery and recording of the instrument evidenced the intention of the grantors to pass a then present interest in the property. Such delivery and recording might have weight as evidencing intention if the instrument were ambiguous or uncertain in its terms. However, such delivery and recording have no weight in the instant case where the instrument clearly expresses the intention of the grantors and is testamentary in character. In *Moody* v. *Macomber, supra,* p. 661, we said:

"The instrument, though in form a deed, was in fact a will. We find no evidence in the record of the delivery of the instrument, *but whether it was delivered or not is of no consequence if, in fact, it was testamentary in character."*

The clear legal import of the several provisions of the instrument in question is that it did not convey a present interest to plaintiff, but was to become operative only upon the death of the grantors and was, therefore, testamentary in character. Such instrument would not be effective as a testamentary devise of the property in question to plaintiff.

This being an ejectment action, plaintiff can recover only on the strength of its title, and not on the weakness of defendant's title. *Brown* v. *Eckel,* 259 Mich. 551. Plaintiff has failed to establish title and, therefore, cannot maintain the present ejectment action.

For the reason stated in this opinion, the judgment of no cause of action entered by the trial court should be affirmed. Defendants should recover costs.

CHANDLER, C. J., and BUTZEL, J., concurred with STARR, J. WIEST, J., did not sit.